241 N.J. Super. 414 (1990)
575 A.2d 66
KERRY ANN BALDINO, PLAINTIFF,
v.
JOHN EDWARD BALDINO, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
April 25, 1990.
*415 Draesel, Sunshine, Atkins, Minassian & Tafuri, attorneys for plaintiff.
Picinich & Selser, attorneys for defendant.
KRAFTE, J.S.C.
We are faced here with the difficult issue of whether a child of divorced parents shall be deemed unemancipated due to his voluntary addiction to illegal drugs. This court finds that the use of such drugs does not constitute a legally accepted handicap which would trigger the continued obligation of support beyond the point at which emancipation would otherwise occur. The public policy of this State strongly discourages the protection of persons involved with such illicit activity. So too, it is unreasonable for a court to conclude that child support and medical expenses be paid for years after such obligation would terminate for a non-addicted child.
The parties were married in 1966, and divorced by a final judgment entered March 2, 1982. Plaintiff-wife received custody of the couple's three children and defendant-husband became obligated to pay $300 a week support, allocated $175 as alimony and $125 as child support. The child support was to be reduced to $75 a week upon the emancipation of the first child. When the next child was emancipated, defendant's obligation was to decrease again, allocated $150 as alimony and $75 as child support. All payments were to terminate upon the emancipation of the last child, although the agreement was not specific *416 as to events which would constitute emancipation. In addition to monetary support, defendant was to pay all medical and prescription drug expenses for the children. There was also a provision by which defendant conveyed to plaintiff all right, title and interest in the marital home in exchange for a second mortgage in the amount of $20,000, at a rate of 10% compounded annually, due and payable upon the youngest child's graduation from high school.
The youngest son, in fact, graduated from high school in June 1989 and defendant moved to enforce the property settlement agreement with respect to the mortgage. In a cross-motion, plaintiff attempts to offset the mortgage amount by certain considerable monies which she paid on behalf of the children and seeks contribution from their father.
This court now focuses solely upon the factors surrounding the treatment of the eldest child's drug problem, the costs of which constitute much of the credit claimed here. At age 17, he left high school and entered a drug rehabilitation program, KIDS of Bergen County, the initial fee for which was $5000. Defendant had agreed to pay one-half of that amount. Other financial obligations were part of the program, according to plaintiff, and included such things as transporting groups of children back and forth to the center and a monthly fee of $75. Defendant continued to pay child support throughout the 56-week recovery period. After completing the program, John, Jr. returned to high school and graduated in August 1986, at age 19, with straight A's. He was even granted a $10,000 college scholarship. This court has no difficulty finding that he was unemancipated up to and including the point at which he graduated from high school. Accordingly, a portion of the costs of the drug treatment shall be credited against the money owed to defendant on the mortgage. Had he made use of his scholarship and continued his education, the father's obligation to support would have undoubtedly been continued. However, this did not occur.
*417 In February 1988, the son moved out of his mother's home and into his father's, at which point defendant unilaterally terminated child support. John, Jr. stayed with his father for ten months, holding approximately ten different jobs during that period. He resumed using drugs, was asked to leave his father's apartment, and in December 1988, John, Jr. returned to the KIDS Program, almost two years after his high school graduation. Plaintiff contends that her son was never emancipated because his continued drug addiction rendered him incapable of caring for himself. She continued to support him and paid for the drug therapy a second time. Apparently on the road to success, the young man planned to become a drug counsellor and go on to college, but in May 1989, at age 22, he began using drugs again and left his mother's home. Plaintiff requests that this court find John, Jr., yet unemancipated and seeks further credit for money expended, as and for his care, during the period which she terms his "disability."
The duty of a parent to support a child is imposed by statute. N.J.S.A. 2A:34-23 provides for the "care, custody, education and maintenance of the children ... as the circumstances of the parties and the nature of the case shall render fit, reasonable and just." This duty is shared equally by both mother and father and continues until the child is emancipated. N.J.S.A. 9:2-4.
Emancipation is the "act by which one who was unfree, or under the power and control of another is rendered free or set at liberty and made his own master." Blacks Law Dictionary (rev. 4 ed. 1968) at 613. The term is customarily used with reference to the relationship between parent and child which involves an "entire surrender of the right to the care, custody and earnings of such child as well as a renunciation of parental duties." Ibid. The age at which a child is deemed to be sufficiently able to maintain an independent existence has been influenced by society's perception. Today, it is not unusual for a parent to support a child through his or her 20s in order for all avenues of higher education to be explored.
*418 The Supreme Court of New Jersey has enumerated various standards by which a child becomes emancipated, thereby releasing the parental right to custody and discharging the duty to support. Newburgh v. Arrigo, 88 N.J. 529, 443 A.2d 1031 (1982). Emancipation can occur at the child's marriage, by order of the court based on the child's best interests, or by attainment of a certain age. While the age of majority, being 18, establishes prima facie proof of emancipation, the facts of each case must be addressed. Id. at 543, 443 A.2d 1031. Courts are frequently called upon to decide this issue in the context of divorce or separation cases in which education expenses, along with continued child support payments and medical coverage, are sought past the legal age of majority. State courts have applied the obligation to provide educational costs as circumstances demand. See Khalaf v. Khalaf, 58 N.J. 63, 275 A.2d 132 (1971); Limpert v. Limpert, 119 N.J. Super. 438, 292 A.2d 38 (App.Div. 1972); Jonitz v. Jonitz, 25 N.J. Super. 544, 96 A.2d 782 (App.Div. 1953); Cohen v. Cohen, 6 N.J. Super. 26, 69 A.2d 752 (App.Div. 1949).
The courts tend to make the custodial parent primarily responsible for determining the factors, such as education, which would act to continue a child's dependence upon parents for support beyond the age of majority. Schumm v. Schumm, 122 N.J. Super. 146, 299 A.2d 423 (Ch.Div. 1973). This court has recognized the problem inherent in existing case law which places a greater burden on divorced parents to contribute toward the support of a child than on parents who remain married. Sakovits v. Sakovits, 178 N.J. Super. 623, 429 A.2d 1091 (Ch.Div. 1981).
Also recognized is the possibility of declaring a child unemancipated, even after a period of emancipation. Courts must apply a reasonable limitation in cases where such a hiatus exists, so as not to create an "open ended burden." Id. at 632, 429 A.2d 1091. Thus, had John, Jr. decided to accept his scholarship or to continue school within a reasonable time after his graduation from high school, this court would have applied *419 the Sakovits standards and found that contribution toward his support was warranted. The Appellate Division recently emphasized the broad equitable power of courts to mandate college contribution of a non-custodial parent, even when the ability to pay did not evolve until after most of the expenses had been shouldered by the other parent. See Weitzman v. Weitzman, 228 N.J. Super. 346, 549 A.2d 888 (App.Div. 1988).
The totality of facts and circumstances is considered by courts in determining the obligation of divorced parents to provide the ongoing costs of higher education past the age of majority. Hoover v. Voigtman, 103 N.J. Super. 535, 248 A.2d 136 (Cty.Ct. 1968). Thus, although John, Jr. was age 19 at his high school graduation, there is no question that support was mandated at least up to that point and would have continued had he attended college, as his parents hoped. Since that was not the case here, this court must consider the reasoning behind plaintiff's request for the continuation of such an obligation.
Plaintiff states that her son is disabled and submits information to the court from various authorities in order to show that drug addiction may be considered an illness. New Jersey case law holds that parents may be required to contribute to the costs of the necessary care and maintenance of an adult child who becomes so disabled due to a pre-existing mental illness or emotional disorder that the capacity to maintain oneself is lacking. Kruvant v. Kruvant, 100 N.J. Super. 107, 241 A.2d 259 (App.Div. 1968). Applying Kruvant to the case at hand would require a finding that John, Jr. has a continuing disability which existed prior to the point at which a court would find him emancipated under other circumstances. Under the law and public policy of the State of New Jersey, such a finding is not possible.
The Attorney General of New Jersey has considered the question of whether addiction to illegal drugs is a "handicap" which is protected under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. In an opinion released October *420 6, 1989, he concluded that past or present addiction involving illegal use of drugs cannot be the basis of a claim under the statute. While this opinion is not precisely on point nor binding upon this court, it is persuasive.
The problem of illicit drug use is one to which the State has paid great attention. The Attorney General addresses these concerns and the application of his opinion to this court's decision in unequivocal. The Legislature took a strong position in its aim to eliminate the use and sale of illegal drugs and recognized the serious threat to the health, welfare and safety of the citizens of the State. Att'y. Gen. F.O. (1989) No. 4 (citing the Comprehensive Drug Reform Act of 1986, N.J.S.A. 2C:35-1 et seq.).
The Attorney General found that the "fundamental objective of eliminating the use of illegal drugs, and thereby preventing the significant harm that results from such drug use, precludes the application of the Law Against Discrimination in a manner that would, in effect, extend extraordinary protection to controlled dangerous substance users." Id. at 5. It is obvious that by continuing parents' obligation to support a child based solely on the problems created by this illegal activity would be contrary to the State's desire to make drug users accountable for their own actions. This reflects the announced federal strategy, as well. Id. at 8 (citing the National Drug Control Strategy (September 1989) at 100).
While some medical authorities have recognized drug dependance upon some illegal substances as a treatable psychiatric condition, those same authorities have stated that such clinical categorizations should not be used in the context of legal standards. See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-III-R) (3 ed. 1987) at xxix. Without an explicit finding that addiction to illegal substance is a disability, the rationale of Kruvant cannot apply, and therefore, defendant cannot be made to contribute to the support of John, Jr. after his graduation *421 from high school. The State of New Jersey has made it abundantly clear that it is contrary to public policy to encourage anything which would act to excuse the use of illicit drugs or exempt addicted persons from penalties incurred for crimes committed while under their influence. While John, Jr. should be commended for any attempts made at rehabilitation, this court has no basis in law or policy to compel his parents to contribute financially to his support after he graduated from high school and became employed rather than continuing his education.
The point at which emancipation takes place is flexible, based upon the particular facts and circumstances each family faces. Courts must use the sometimes elusive standard of reasonableness when faced with a situation in which no agreement between the custodial and non-custodial parent can be reached or enforced. However, this court does not work in a vacuum and will take judicial notice of the tremendous toll drug addiction has taken upon this family and further notes that it reflects upon our society as a whole.
While acknowledging this, a decision cannot be made which flies in the face of the clear public policy of this State. To mandate that parents economically support a voluntarily addicted child beyond the point whereby that child would otherwise be emancipated exceeds the capacity of this court and would be tantamount to a condonation of the addiction and to actually supporting the illegal habit itself. This court therefore finds that voluntary drug addiction will not prevent a declaration of emancipation which would otherwise be made.