700 A.2d 384

MARK FILIPPONE, PLAINTIFF–RESPONDENT/CROSS–APPEL-LANT, v. FLORENCE S. LEE F/K/A FLORENCE S. FILIP-PONE, DEFENDANT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 9, 1997—Decided September 23, 1997.

302

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Deborah L. Ustas* argued the cause for appellant/cross-respondent (*Weinberg & Ustas*, attorneys; *Ms. Ustas*, on the brief).

*Victoria de Almeida* argued the cause for respondent/cross-appellant (*Pescatore & Sauter*, attorneys; *Ms. de Almeida*, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This is a post-judgment marital matter involving, essentially, the issue of whether either or both of the two children of the marriage are emancipated and, if so, as of what time. The mother, defendant Florence S. Lee, a physician against whom a support order for both of the children had previously been entered, appeals on leave granted from two orders of the Family Part entered on July 15, 1996, declaring that the daughter of the marriage, Gita Filippone, was unemancipated as of that date and would remain unemancipated until graduation from college or earlier termination of her college enrollment. She also appeals from the determination that the son of the marriage, Ted Filippone, was not emancipated prior to June 1, 1995. The father, plaintiff Mark S. Filippone, also a physician, cross appeals from the declaration that the son of the marriage, Ted Filippone, was emancipated as of June 1, 1995. Both parties also appeal from those provisions of the two orders specifying their own and the other's continued support, arrearages, and counsel fee obligations as well as a provision requiring a plenary hearing to determine the mother's asserted entitlement to credit for support she paid for Ted while he was a resident at Lazarus House, a community support facility. We affirm the orders insofar as they adjudicate the emancipation issue respecting both children, direct the modification of the support provisions consistent with this opinion, and remand for further proceedings.

We are constrained at the outset to note the procedural irregularities attending the disposition of this matter in the trial court. We have concluded from our review of the record and from the briefs and oral arguments on these appeals that these procedural irregularities do not preclude our address of the merits of the emancipation issues for the reason that there is no dispute of material fact raised by the motions in the trial court. Nevertheless, these procedural irregularities are significant, have potentially serious consequences in terms of the correct and expeditious disposition of litigation, and should not be repeated in the future.

██ First, these serious emancipation disputes were decided on the papers pursuant to *R.* 1:6–2(b) and (d) and *R.* 5:5–4(a) despite the request of both parties for oral argument. *R.* 5:5–4(a) provides in pertinent part that "the court shall ordinarily grant requests for oral argument on substantive and non-routine discovery motions...." This was obviously a substantive motion that the parties should have been allowed to argue orally as a matter both of due process and the appearance of due process. *See, e.g., Fusco v. Fusco,* 186 *N.J.Super.* 321, 328–329, 452 *A.*2d 681 (App. Div.1982). There was patently no special or unusual circumstance here warranting the court's dispensing with an entirely appropriate request for oral argument of a motion presumptively entitled to argument on request. *Compare Kozak v. Kozak,* 280 *N.J.Super.* 272, 655 *A.*2d 95 (Ch.Div.1994) (request for oral argument of a substantive motion may be denied if the court is satisfied that the motion is frivolous, repetitive, based on unsubstantiated allegations and intended to harass).

██ We further note that in deciding these motions on the papers, the judge, contrary to the mandate of *R.* 1:7–4, gave no indication at all of his reasons, either by an oral statement on the record, a letter of explanation, or a notation on the orders themselves. We have repeatedly cautioned the trial court with respect to the critical importance of the obligation to provide findings and a statement of reasons both in terms of the trial and appellate process. Litigants and their attorneys are entitled to know the factual and legal basis of the court's determination, and they are disserved if the trial court fails in this obligation. Moreover, the appellate court ordinarily cannot perform its review function in the absence of findings. *See, e.g., Curtis v. Finneran,* 83 *N.J.* 563, 569–570, 417 *A.*2d 15 (1980); *Italiano v. Rudkin (Italiano),* 294 *N.J.Super.* 502, 505, 683 *A.*2d 854 (App.Div.1996); *Ribner v. Ribner,* 290 *N.J.Super.* 66, 77, 674 *A.*2d 1021 (App.Div.1996); *Salch v. Salch,* 240 *N.J.Super.* 441, 443, 573 *A.*2d 520 (App.Div. 1990); *Matter of Will of Marinus,* 201 *N.J.Super.* 329, 338–339, 493 *A.*2d 44 (App.Div.1985), *certif. denied,* 101 *N.J.* 332, 501 *A.*2d

981 (1985). It is only because the emancipation issues raised on this appeal involve only questions of law in the context of undisputed facts that we are able to proceed to disposition without burdening the parties and the court system with the remand that would otherwise be necessary.[1]

There is yet another anomaly we must address. The emancipation decisions made here resulted from the father's motion to enforce the mother's adjudicated support obligation and the mother's cross motion to declare the children emancipated. In making their respective motions, each party submitted a form of order in accordance with *R.* 1:6–2(a). Predictably, the two forms contained contradictory and otherwise disparate provisions. As we have noted, each of the parties prevailed to some extent. One child was declared emancipated, the other not, and discrete support and arrearage provisions flowed from each determination. Under these circumstances, the appropriate way for the court to have proceeded would have been to advise the parties of the totality of its rulings with reasons therefor, and then directed one of the parties, most likely the one most prevailing, to draft a single conforming order memorializing all of the dispositions. What happened here is that the judge, with substantial interlineations, added paragraphs and crossings out, and signed both the orders submitted to him with the motions. The result is a pair of orders difficult to read and refer to, to some extent inconsistent in decretal provision, and providing a poor and potentially confusing litigation record for now and the future. That too disserves the interests of the parties and the appellate court and is a practice that should not be repeated.

---

[1] While we are aware that there are a number of factual disputes between the parties raised by the disputatious certifications, our review of the record satisfies us that none of these disputes is material to the issues we here decide. Hence no hearing as to them is required, *see Fusco v. Fusco,* 186 *N.J.Super.* 321, 452 A.2d 681 (App.Div.1982), and the matters may be regarded as appropriate for application of the summary judgment technique. *See Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 666 A.2d 146 (1995).

 We now address the emancipation issues. We do so in light of these well-settled principles. Emancipation of a child is reached when the fundamental dependent relationship between parent and child is concluded, the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support. Emancipation may occur by reason of the child's marriage, by court order, or by reaching an appropriate age, and although there is a presumption of emancipation at age eighteen, that presumption is rebuttable. In the end the issue is always fact-sensitive and the essential inquiry is whether the child has moved "beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own." *Bishop v. Bishop*, 287 *N.J.Super.* 593, 598, 671 *A.*2d 644 (Ch.Div.1995). *See also Newburgh v. Arrigo*, 88 *N.J.* 529, 543, 443 *A.*2d 1031 (1982); *Weitzman v. Weitzman*, 228 *N.J.Super.* 346, 356, 549 *A.*2d 888 (App.Div.1988), *certif. denied*, 114 *N.J.* 505, 555 *A.*2d 623 (1989); *Quinn v. Johnson*, 247 *N.J.Super.* 572, 577, 589 *A.*2d 1077 (Ch.Div.1991).

These are Gita's circumstances. She was born in 1976, five years before her parents' separation. Although she and her brother Ted were initially in their mother's custody, they moved back with their father in 1987, and the ensuing custody dispute between the parents was resolved in 1989 by a consent order providing for joint legal custody with the father having primary residential custody and the mother having specified visitation privileges. In 1990, on the father's application, an order was entered requiring the mother to pay weekly child support in the amount of $175 for each child as well as forty-seven percent of their school and college expenses and unreimbursed medical bills. Gita was then in high school. She completed high school in a timely manner and then enrolled in St. Peter's College, which she still attends as a full-time student.

 The basis on which the mother claims that Gita is emancipated despite what would otherwise appear to be a clear case of non-emancipation under *Newburgh v. Arrigo, supra,* is the fact

that in 1994, while in high school and living with her father, Gita became pregnant and gave birth to a child. She did not marry the father of the child, who provides her with minimal support for the baby. She continued to live at home, to attend high school and now college, and to rely on parental support to meet her personal and educational needs. The only question is whether the birth of a child to an unmarried teenager who is still financially dependent on her parents, who lives at home, and who, in terms of her age, educational pursuits, and other circumstances would be patently non-emancipated, is rendered emancipated simply by reason of the birth of the child. Although the issue has not been considered in a reported New Jersey case, other states that have addressed it are unanimous in concluding that an otherwise unemancipated teenager who is dependent on parental support is not disqualified from receiving it because she has become pregnant and elected to give birth to a child as an unmarried mother. Her own motherhood in these circumstances does not render her emancipated. *See, e.g., In re Marriage of Clay,* 670 *P.*2d 31, 32 (Colo.Ct.App.1983); *Doerrfeld v. Konz,* 524 *So.*2d 1115, 1116–1117 (Fla.Dist.Ct.App. 1988); *Hicks v. Fulton County Dept. of Family and Children Services,* 155 *Ga.App.* 1, 270 *S.E.*2d 254, 255 (1980); *French v. French,* 599 *S.W.*2d 40, 41 (Mo.Ct.App.1980); *Wulff v. Wulff,* 243 *Neb.* 616, 500 *N.W.*2d 845, 851 (1993); *Thompson v. Thompson,* 94 *Misc.*2d 911, 405 *N.Y.S.*2d 974, 975 (Fam.Ct.1978), *aff'd,* 71 *A.D.*2d 753, 419 *N.Y.S.*2d 239 (N.Y.App.Div.1979); *Griffin v. Griffin,* 384 *Pa.Super.* 188, 558 *A.*2d 75, 80 (1989), *appeal denied,* 524 *Pa.* 621, 571 *A.*2d 383 (1989). As these cases make clear, the fact that a daughter in these circumstances is receiving some financial assistance, either public or from the father, for her child or is working part-time to contribute to her and the child's expenses while attending college is of no moment in the emancipation determination.

We are in full accord with the decisions of our sister states. There is no question that the daughter of this marriage would be unemancipated but for the birth of her child. Her responsibility for that child does not make her any less dependent as a college

student living in her father's house. We therefore affirm the decision of the trial court declaring that Gita will remain unemancipated until completion or other termination of her college education.

◼ We add one further observation respecting Gita's non-emancipation. The mother relies on the provision of the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –33, that defines an emancipated minor as "a person who is under 18 years of age but ... has a child or is pregnant...." *N.J.S.A.* 2C:25–19e. We regard that definition as entirely inapposite to the issues here. The point of the definition is obviously to accord such persons the right themselves to seek protection under the Act. We are confident that that is the limited purpose of the definition and that it was not intended in any way to alter or abridge theretofore established common-law and statutory relationships between parents and children.

Now as to Ted. Ted was a troubled early teenager. In 1991, when he was fourteen years old, he ran away from home, and after a time took up residence in Lazarus House, a New York City boys' home. The father asserts that he provided for Ted's support while he there resided. In the fall of 1994, after completing his G.E.D., Ted enrolled at the John Jay College of Criminal Justice. Although he passed the two pass-fail courses he took in the fall semester, he failed all four courses he took in the spring semester and did not return to school in the fall 1995 semester. He attempted re-enrollment for the spring of 1996 but withdrew from all his courses. In March or April 1996, Ted was stabbed by a Lazarus House resident and sustained serious injuries, the extent of which is in dispute. The father claims Ted is paralyzed, wheelchair and crutch dependent, and permanently unable to work. The mother asserts that he had a remarkable recovery and walks with the aid of a cane.

Based on the foregoing facts, the mother took the position that Ted was emancipated when he took up residence at Lazarus House, then relieving her of her support obligation. The father

claims that Ted is still unemancipated because of his now total dependency. The judge determined that Ted became emancipated upon the completion of the spring 1995 John Jay semester when he had failed all his courses and had no likely prospect of successfully pursuing further higher education.

We reject the mother's contention that Ted became emancipated at the age of fourteen by reason of his Lazarus House residence. That circumstance is, in our view, patently insufficient to overcome the presumption of non-emancipation prior to the age of eighteen. Our own courts have recognized that residence by a minor apart from his parents does not by itself result in emancipation. *Quinn v. Johnson,* 247 *N.J.Super.* 572, 577, 589 *A.*2d 1077 (Ch.Div.1991). Other states have, even more to the point, expressly held that a troubled minor's removal from his parents' home to a public or private institutional alternative or even to the home of friends or relatives does not relieve the parents of their support obligation during minority provided the child is not entirely self-supporting. *See In re Marriage of Donahoe,* 114 *Ill.App.*3d 470, 70 *Ill.Dec.* 152, 155, 448 *N.E.*2d 1030, 1033 (1983); *Quillen v. Quillen,* 659 *N.E.*2d 566, 576 (Ind.Ct.App. 1995), *vacated in part, adopted in part,* 671 *N.E.*2d 98 (Ind.1996); *Bopp v. Bopp.,* 671 *S.W.*2d 348, 350–351 (Mo.Ct.App.1984); *In re Marriage of Bordner,* 220 *Mont.* 339, 715 *P.*2d 436, 439 (1986); *Hildebrand v. Hildebrand,* 239 *Neb.* 605, 477 *N.W.*2d. 1, 5 (1991); *In re Owens,* 96 *Ohio App.*3d 429, 645 *N.E.*2d 130, 132 (1994); *Trosky v. Mann,* 398 *Pa.Super.* 369, 581 *A.*2d 177, 178 (1990). We agree.

We are also satisfied that since Ted's residence at Lazarus House left him still unemancipated, he continued in that status while he made an attempt to pursue a college education. Surely, as the child of an adequately affluent professional family, he could reasonably assume that his parents would continue to support him if he were able to do so successfully, and, in the circumstances, the *Newburgh* doctrine would require them to do so. However, *Newburgh* does not require that level of support and concomitant

deferred emancipation for a child unable to perform adequately in his academic program. We are satisfied that Ted's failure to pass any of his courses in the spring 1995 semester, reinforced by his failure to return to school in the ensuing fall semester, virtually mandated the judge's conclusion that emancipation could be no longer deferred and that the parents should be relieved of the support obligation as of the end of the 1994–1995 school year, namely, the June 1, 1995, date fixed by the court.

The sole remaining question then as to Ted is whether his incurring of a serious disability almost a year after emancipation restored him to an unemancipated status. In *Kruvant v. Kruvant*, 100 *N.J.Super.* 107, 120, 241 *A.*2d 259 (App.Div.1968), we rejected that proposition, and we see no reason to depart from *Kruvant* now. *See also Baldino v. Baldino*, 241 *N.J.Super.* 414, 419, 575 *A.*2d 66 (Ch.Div.1990).

Accordingly, we affirm the trial court's determination that Ted was emancipated on June 1, 1995, and that the mother's support obligation ceased on that date.

Several additional issues remain. First, the court awarded counsel fees to neither party, and both appeal from the denial of their respective applications. In the circumstances here, we see no reason for an award of counsel fees to either. Their financial situations are comparable and both have adequate income and resources to pay their own lawyers. Not only is there no apparent need here for a counsel fee award but there is also nothing to suggest that the application of either was brought in bad faith, particularly since New Jersey law afforded no clear holding as to either of the basic emancipation issues.

Since we have affirmed both emancipation determinations by the trial judge, his orders respecting continued support for Gita and arrearages owed for both Gita and Ted necessarily follow. There is, however, one inconsistency that must be corrected. Although the judge fixed June 1, 1995, as the date of Ted's emancipation, he relieved the mother of the support obligation

only as of September 1, 1995. This appears to be a scrivener's error since at least some of the emancipation dates in the order had been stricken out and written over. We see no basis for imposing upon the mother a support obligation for any period of time after emancipation. Accordingly, we remand for modification of the orders by calculating the mother's arrearages consistent with a June 1, 1995, support termination date.

One material dispute did emerge from the papers, and as to that dispute the judge ordered a plenary hearing, resulting in the orders entered being rendered interlocutory by their failure to dispose of all issues and requiring the mother's motion for leave to appeal, which, as noted, we granted. That dispute concerns the mother's claim that she should be relieved from the support obligation for the period of Ted's residence in Lazarus House, during which, she claims, Ted was being supported by others, making her contribution to the father superfluous. Neither party appeals from that directive, and we will not interfere with it.

To summarize, we hold the following as to both the appeal and the cross appeal. First, the judge did not err in declining to hold an evidential hearing. Although he should have permitted oral argument on the motion and cross motion, his failure to do so is not, in the circumstances here, reversible error. We affirm the determinations respecting the date of Ted's emancipation and Gita's non-emancipation and, with the noted correction that must be made, all financial obligations flowing from those determinations. We affirm the order for plenary hearing.

We remand to the trial court for modification of the orders appealed from in order that defendant's support obligation be terminated as of June 1, 1995. We also remand for the ordered plenary hearing. In all other respects, the orders appealed and cross appealed from are affirmed.