716 A.2d 569

L.D., PLAINTIFF, v. K.D., DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Gloucester County

Decided March 25, 1998.

*John DeSimone (Hannold, Marshall & Becker)*, attorney for plaintiff.

*Michael A. Diamond*, attorney for defendant.

LIHOTZ, J.T.C. (temporarily assigned t/a J.S.C.).

The issue presented for determination by the court is whether divorced parents are required to provide support for a drug dependent nineteen year old, who after failing twelfth grade enrolled in a one year residency drug rehabilitation program which also facilitates the child's earning a GED.

Defendant, K.D. filed a pro se motion with this court on November 24, 1997, returnable January 9, 1998, seeking what he called a "discontinuation of child support". In reviewing the certification supporting of the motion, K.D. seeks to have an order

declaring Kelly the parties' child, emancipated as a result of the fact that: she has failed twelfth grade; in his words, "made no attempt to attend summer courses"; and because in the early part of 1997, Kelly did not reside in her mother's residence to live on her own.

K.D. attached the final judgment of divorce entered by the court on November 21, 1985, providing for the payment of child support in the amount of $100.00 per week, allocated $50.00 per week per child.

Plaintiff L.D. responded and filed a response and cross motion, seeking to deny defendant's request and to require the continuation of child support at $100.00 per week payable through the Gloucester County Probation Department. She also sought defendant's production of a case information statement and an audit by the probation department as provided by the court's order of August 18, 1995.

In her certification L.D. states that Kelly should not be emancipated merely because she has turned nineteen years of age. Mrs. Dukes acknowledged that Kelly failed the twelfth grade while attending Cherokee High School. The difficulty in school occurred in February of 1997, when Kelly became involved in drug use developing a heroin addition. She enrolled in out patient rehabilitation and detox at West Jersey Hospital in order to terminate that addiction. She attends an in-patient rehabilitation program in Atlantic City at the Institute for Human Development. This one year in-patient monitored rehabilitation program also will afford Kelly the necessary course work to achieve her GED.

L.D. further acknowledges that from February of 1997 until September 1997 Kelly lived with her not because she had no intention of completing school but because she went through detox while waiting for a bed at the Atlantic City facility. She asserts that at no time was Kelly self-sufficient or independent. L.D. also noted that in the fall of 1996 to early 1997 Kelly did have a separate address from her mother so that she could finish her senior year at Cherokee High School as L.D. had moved to

Blackwood in Camden County. Kelly was living in an apartment in which she had a room mate to share expenses. The costs on behalf of Kelly were provided by her mother. In this environment, unfortunately Kelly became exposed to and developed her drug dependence problem.

The court was also supplied with the individualized education program conference report prepared by the Lenape Regional High School district on January 29, 1997 for Kelly, a student at Cherokee High School. The team conclusion based upon the evaluations, observations, teacher reports and a review of the student's records was that the student should be classified as "multiply handicapped". Kelly was identified as one with emotional disturbances causing behavioral problems. It was recommended that a course of therapy along with the possibility of anti-depressant medications be explored to assist her so she would not fail school.

The court reviewed the specific details of Kelly's program at the Institute for Human Development, which includes vocation training of life's skills and job readiness along with the in-house GED preparation classes. There are also structured programs for curing the addiction and providing rehabilitation as a result of the drug dependence.

The court received briefs presenting the parties' respective positions. In essence L.D. argues that although Kelly failed her senior year as a result of her drug dependency, she has taken steps with the assistance of her mother to eliminate that dependence and at the same time complete high school through the alternative GED program. Except for the period of February 1997 until acceptance at the institute, in August 1997, Kelly pursued completion of high school.

K.D. contends that Kelly be declared emancipated because she is nineteen years of age, one year passed the age of majority in New Jersey. He also asserts that the court cannot condone drug dependence and, therefore, the fact that Kelly is in a rehabilitation facility should not preclude a finding of emancipation.

By state statute, both parents shall provide for the "care, custody, education and maintenance of the children ..." as is fit, reasonable and just based upon the totality of the circumstances of the case. *N.J.S.A.* 2A:34–23. Also see, *Grotsky v. Grotsky,* 58 *N.J.* 354, 277 *A.2d* 535 (1971) Both parents are equally charged with their child's care, nurture, education and welfare. *N.J.S.A.* 9:2–4. This parental duty to support continues until the child is emancipated. *Newburgh v. Arrigo,* 88 *N.J.* 529, 443 *A.2d* 1031 (1982). Age alone is not dispositive of emancipation. *Bishop v.. Bishop,* 287 *N.J.Super.* 593, 597, 671 *A.2d* 644 (Ch.Div.1995).

The presumption of emancipation at age 18 is a rebuttable one. A critical review of the facts and circumstances of the child must be made. See *N.J.S.A.* 9:17B–3. To determine emancipation the court must analyze all facts to determine whether the child "has moved beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own." *Filippone v. Lee,* 304 *N.J.Super.* 301, 308, 700 *A.2d* 384 (App.Div.1997), *citing Bishop v. Bishop,* 287 *N.J.Super.* 593, 598, 671 *A.2d* 644 (Ch.Div.1995). The court finds emancipation is reached "when the fundamental dependent relationship between parent and child is concluded, the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support." *Filippone v. Lee,* supra at 308, 700 *A.2d* 384. *Bishop v. Bishop,* 287 *N.J.Super.* 593, 598, 671 *A.2d* 644 (Ch.Div.1995).

Defendant's argument for emancipation relies upon, *Baldino v. Baldino,* 241 *N.J.Super.* 414, 575 *A.2d* 66 (Ch.Div.1990). In *Baldino,* Judge Krafte describes his task to determine "whether a child of divorced parents shall be deemed unemancipated due to his voluntary addiction to illegal drugs." The court stated:

"To mandate that parents economically support a voluntarily addicted child beyond the point whereby the child would otherwise be emancipated exceeds the capacity of this court and would be tantamount to a condonation of the addiction and to actually supporting the illegal habit itself. This court therefore finds that voluntary drug addition will not prevent a declaration of emancipation which would otherwise be made."

[*Baldino v. Baldino*, 241 *N.J.Super.* 414, 421, 575 *A.*2d 66 (Ch.Div.1990).]

The eldest child of Mr. and Mrs. Baldino, John Jr., left high school at seventeen to enter a drug rehabilitation program. After completing the program (the cost of which both parents contributed), he returned to high school and graduated at age nineteen. He earned a scholarship to college, however, he declined to pursue college, attempted various employment and then resumed utilization of drugs. Almost two years *after* graduating from high school, John Jr. returned to the inpatient drug rehabilitation program. Mrs. Baldino sought Mr. Baldino's contribution contending John Jr. was never emancipated or in the alternative that he should be deemed unemancipated due to his disability. Judge Krafte declined this request.

At first blush it appears that *Baldino* determines the issue before this court. However, a careful examination of the facts at hand show this is not so. Judge Kraft was requested to determine whether John, Jr. was again unemancipated due to his resumption of drug use. John Jr. had been emancipated when he ceased his secondary education. The court was requested to find that he resumed the status of "unemancipation" due to his inability to support himself upon the resumption of drug dependance. The holding of *Baldino*, therefore, does not apply to the facts of this case because Kelly was never emancipated.

It is acknowledged that Kelly was living away from her mother's residence in an apartment in Marlton to attend Cherokee High School from September 1996 to February 1997. The purpose of the residential separation was not because Kelly was "on her own" but because Kelly needed to reside within the school district to attend Cherokee High School. Her mother at that time had relocated to Blackwood but desired Kelly to complete high school in the school she had been for three years. It was impossible for Kelly to commute from Blackwood to Cherokee as a tuition student. Therefore, she assumed residence within the school district. Thus, the fact of Kelly's residence apart from her parents does not by itself result in emancipation. *Filippone v.*

*Lee,* supra at 311, 700 *A.*2d 384; *Quinn v. Johnson,* 247 *N.J.Super.* 572, 577, 589 *A.*2d 1077 (Ch.Div.1991). At the time Kelly resided in Marlton, she was pursuing her senior year of high school. She was completely financially dependent upon her mother who also utilized the child support paid by her father to finance Kelly's living arrangement. Kelly recognized midway through that year that she had a problem for which she needed help. So too, the child study team at or about this same time, recognized Kelly's multiple handicap and learning disabilities.

It is not certain whether the drug dependency was identified by the child study team and one will not know whether the drug use contributed to the learning disabilities or vice versa. In any event, Kelly *never* "moved beyond the sphere of influence and responsibility exercised by [her] parent [to obtain] independent status of . . . her own." *Filippone v. Lee,* supra at 308, 700 *A.*2d 384.

██ The court finds that based upon the circumstances of this case, Kelly continues as a financially unemancipated child of the parties in need of support while she completes her residency program and earns her GED. As expressed by our Supreme Court, "the privilege of parenthood carries with it the duty to assure a necessary education for children." *Newburgh v. Arrigo,* supra at 543, 443 *A.*2d 1031. A minimal level of education necessary to function in today's society is a high school degree or its equivalent as provided by a GED program.

This determination shall not be construed as an acceptance of drug dependence to extend emancipation. The facts show that Kelly never reached emancipation. Her addiction, although voluntary, occurred while she was unemancipated. The use of drugs alone cannot dictate emancipation. Because she never attained the status of emancipation, this decision is not inconsistent with public policy as expressed by Judge Kraft in *Baldino.*

Defendant, K.D. shall continue to provide support for Kelly until her emancipation payable through the probation department in the county in which defendant resides.

As to the amount of support, the court noted that support was last ordered as set forth in the final judgment of divorce dated May 21, 1985. Support for two children was set at $100 per week. It does not appear as if this amount ever changed even though the parties' older child was emancipated at some time prior to this date. As a result of the passage of time, the court will continue the order at $100 per week without prejudice. Defendant shall submit a complete case information statement so that a determination can be made of whether support should be recomputed due to a change of financial circumstances. The court attaches its order consistent with this opinion.