NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0596-13T1

LISA LLEWELYN, f/k/a LISA SHEWCHUK,

        Plaintiff-Respondent,

v.

JAMES SHEWCHUK,

        Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 13, 2015**
>
> **APPELLATE DIVISION**

Argued October 15, 2014 — Decided April 13, 2015

Before Lihotz, Espinosa and Rothstadt.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FM-04-271-02.

Michael P. Albano argued the cause for appellant Adrianna Shewchuk (Albano & Viola, L.L.C., attorneys; Mr. Albano, on the briefs).

Maury K. Cutler argued the cause for respondent James Shewchuk.

Respondent Lisa Llewelyn has not filed a brief.

The opinion of the Court was delivered by

ROTHSTADT, J.A.D.

Appellant, Adrianna Shewchuk, the parties' adult daughter, appeals from the Family Part's August 23, 2013 order granting defendant's motion to terminate child support because she was emancipated, which the court entered with plaintiff's consent. Appellant appeared as an "[i]nterested [p]arty" and participated in the motion.[1]  On appeal, she argues she is not emancipated as she "has not moved beyond [her parents'] sphere of influence or responsibility . . . and has not obtained an independent status of her own[.]"  Defendant James Shewchuk argues in opposition his daughter's voluntary actions resulted in her being emancipated, justifying the court's entry of the subject order.

We have carefully reviewed the record and considered the arguments presented in light of the applicable legal principles. We affirm.

We discern the facts from the motion record.  Appellant was born in 1992 to plaintiff and her biological father.  The parties were married in August 1994, and defendant adopted appellant that same year.  Approximately a year later, a child was born to the parties.  The parties divorced in 2002 and shared joint custody of the two children.  Plaintiff was designated as the parent of primary residence and defendant was

---

[1]  The court did not enter an order permitting her intervention. See R. 4:33.

to pay child support and contribute to the children's college costs.

In April 2013, defendant filed a motion seeking various relief, including having appellant declared emancipated. According to defendant's supporting certification, he learned appellant left plaintiff's home and moved into the home of her biological father as of January 1, 2013, she was not attending school (she graduated from high school in 2011), and was working. In her responsive certification, plaintiff confirmed appellant moved in with her biological father on January 1, but plaintiff thought the move was only temporary. However, as appellant never returned to her residence, plaintiff "join[ed] in on [d]efendant's [m]otion to emancipate [appellant] immediately" and consented to terminating the child support order and crediting defendant with any overpayment.

Appellant filed two certifications in opposition to defendant's motion. In her first certification, she confirmed she left her mother's home in December 2012 to live with her biological father, although she never identified a reason for the move. She further stated she was a "full-time student at" a community college as she "started taking classes in the summer of 2011 . . . [and she was] continuing [her] education" at a different community college "pursuing an associate's degree and

then . . . plan[ning] on continuing [her] education in the medical field." In support of her statement, she provided a copy of her college transcript from the first school she attended. Appellant also confirmed she was working part-time at a doughnut shop, earning $7.75 per hour. Based on these facts, appellant argued she was "not emancipated," "[could not] support" herself "or live independently." According to appellant, her "biological father and his wife [were] supporting [her]."

The "unofficial" community college transcript appellant provided revealed she took one course in the summer of 2011, for which she did not receive college credits. In the ensuing year she took thirty credits, an additional three credits in the summer of 2012 and thirteen more credits in the fall term. She did not provide transcripts from the second school, but instead supplied "Registration Statement and Bill" documents issued by the school. Those statements, for the period after she left her mother's home, show appellant registered for eight credits for spring 2013 and twelve credits for the fall 2013 semester. A course schedule form for the spring 2014 semester indicated appellant intended to take twelve credits.

Appellant also filed a supplemental certification in further opposition to her father's motion. In that

certification, appellant confirmed she was registered for the fall 2013 semester at the second school, she was taking four classes and her "natural father's wife paid [the] bill." She also explained in the spring 2013 semester she originally registered for four classes for eleven credits, dropped a class and completed the remaining eight credits. Appellant stated that her "natural father's wife paid $705.25" of the $1024 tuition bill and $441.10 for her books.

Appellant also stated she had "been seeing [her] doctors for depression and anxiety[,]" and attached a copy of a "Clinical Visit Summary" for an examination conducted on July 22, 2013, by an internist and a July 22, 2013 letter from a psychologist. The summary listed the symptoms that the physician addressed during the examination, recorded her vitals and listed her medications, which included anti-anxiety and anti-depressive medications. It did not indicate a diagnosis. The psychologist's letter, addressed "to whom it may concern," stated "appellant has been a patient of mine since March 2013, and is diagnosed with an anxiety disorder with mixed anxiety and depression related to her family situation."

The court considered oral argument on August 23, 2013. Counsel for appellant and both parties appeared. At the conclusion of counsel's arguments, the court relied upon our

decision in Filippone v. Lee, 304 N.J. Super. 301 (App. Div. 1997), found appellant left her mother's home and was being supported by "other people," and concluded "by her own choosing, she . . . moved beyond the sphere of influence and responsibility exercised by her parents, and she is now independent of her parents."  The court entered an order memorializing its decision and this appeal followed.

Clear standards guide our limited review.  We "do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . . "  Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citation and internal quotation marks omitted).  Also, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding."  Cesare v. Cesare, 154 N.J. 394, 413 (1998).  Accordingly, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, "its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal."

Beck v. Beck, 86 N.J. 480, 496 (1981) (citation and internal quotation marks omitted).

However, we confer no deference to a trial court's interpretation of the law, which we review de novo to determine whether the judge correctly adhered to applicable legal standards.  See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  Reversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went "so wide of the mark that a mistake must have been made."  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citation and internal quotation marks omitted).  It is when we are convinced the trial court's determinations "are so manifestly unsupported . . . as to offend the interests of justice," that we intervene. Rova Farms, supra, 65 N.J. at 484 (internal citation and quotation marks omitted) accord N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008).

We begin our review by recognizing a child's right to pursue support from his or her parents.  Children of divorced parents have the right "to be supported at least according to the standard of living to which they had grown accustomed prior to the separation of their parents." Pascale v. Pascale, 140 N.J. 583, 592 (1995) (citations and internal quotation marks

omitted).  "[O]ne of the fundamental concepts in American society is that parents are expected to support their children until they are emancipated, regardless of whether the children live with one, both, or neither parent."  Colca v. Anson, 413 N.J. Super. 405, 414 (App. Div. 2010) (citations and internal quotation marks omitted).  "The obligation to provide child support is [i]ngrained into our common law, statutory, and rule-based jurisprudence."  Ibid. (citations and internal quotation marks omitted).  "Accordingly, a parent is obliged to contribute to the basic support needs of an unemancipated child to the extent of the parent's financial ability[.]"  Ibid. (alteration in original)(citation and internal quotation marks omitted).

"[I]t is also firmly established that child support is for the benefit of the children; therefore, the right to receive support belongs to the children, not the custodial parent."  Ibid. (citations omitted).  A child's right to support is, therefore, enforceable not only at the insistence of a custodial parent against a non-custodial parent, but at the child's insistence as well.  See Uniform Parentage Act, N.J.S.A. 9:17-45(a) and (b); and -53 (c)(permitting an adult child to bring an action for paternity and support up to the age of twenty-three); and Sakovits v. Sakovits, 178 N.J. Super. 623, 631 (Ch. Div. 1981) (holding that a previously emancipated child should not

"forever . . . be estopped from seeking . . . contribution from his parents" towards beginning or resuming his education).

Enforcement by the child is not necessarily defeated by the fact that she has reached the age of majority. "In certain situations, parents still have an economic duty to support children after their eighteenth birthday, . . . ." N.J. Div. of Youth & Family Services v. W.F., 434 N.J. Super. 288, 296 (App. Div.) (quoting Newburgh v. Arrigo, 88 N.J. 529, 543 (1982)), certif. denied, 218 N.J. 275 (2014)). "[I]n appropriate circumstances, the privilege of parenthood carries with it the duty to assure [for example] a necessary education for children." Newburgh, supra, 88 N.J. at 543; see also Gac v. Gac, 186 N.J. 535, 542 (2006) ("The Legislature and our courts have long recognized a child's need for higher education and that this need is a proper consideration in determining a parent's child support obligation.").

A determination of emancipation is a legal concept, imposed when the fundamental dependent relationship between parent and child ends. See Dolce v. Dolce, 383 N.J. Super. 11, 17 (App. Div. 2006) (stating emancipation is "the conclusion of the fundamental dependent relationship between parent and child"). It is not automatic and "need not occur at any particular age . . . ." Newburgh, supra, 88 N.J. at 543. When the

A-0596-13T1

circumstances surrounding the parent-child relationship support a finding the child is emancipated, "the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support." Filippone, supra, 304 N.J. Super. at 308. However, a child's right to support is also not "defeated merely because both parents are united in their determination to declare the child emancipated." Johnson v. Bradbury, 233 N.J. Super. 129, 136 (App. Div. 1989).

The law also provides that once a child reaches the age of majority, now eighteen, N.J.S.A. 9:17B-3, a parent has established "prima facie, but not conclusive, proof of emancipation." Ibid. (citations omitted). Once the presumption is established, the burden of proof to rebut the statutory presumption of emancipation shifts to the party or child seeking to continue the support obligation. See Filippone, supra, 304 N.J. Super. at 308. The presumption of emancipation may be overcome by evidence that a dependent relationship with the parents continues because of the needs of the child. Dolce, supra, 383 N.J. Super. at 18.

Deciding whether a child is emancipated requires a fact-sensitive analysis. Newburgh, supra, 88 N.J. at 543. "[T]he essential inquiry is whether the child has moved beyond the sphere of influence and responsibility exercised by a parent and

obtains an independent status of his or her own." Filippone, supra, 304 N.J. Super. at 308 (citations and internal quotation marks omitted). A court's emancipation "determination involves a critical evaluation of the prevailing circumstances including the child's need, interests, and independent resources, the family's reasonable expectations, and the parties' financial ability, among other things." Dolce, supra, 383 N.J. Super. at 18 (citing Newburgh, supra, 88 N.J. at 545).

The critical evaluation required for emancipation determinations typically necessitates a plenary hearing, especially "when the submissions show there is a genuine and substantial factual dispute[,]" which the trial court must resolve. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007); see also Tretola v. Tretola, 389 N.J. Super. 15, 20 (App. Div. 2006) (reversing motion on emancipation because the court "failed to recognize there were material facts in dispute and evidence beyond the motion papers necessary for resolution of the matter" required a plenary hearing); Conforti v. Guliadis, 128 N.J. 318, 322 (1992) (holding plenary hearings are required when there are "contested issues of material fact on the basis of conflicting affidavits"). However, "[a]s is particularly the case in matters that arise in the Family Part, a plenary hearing

is only required if there is a genuine, material and legitimate factual dispute."  Segal v. Lynch, 211 N.J. 230, 264-65 (2012).

Following our review, we conclude appellant's opposition to defendant's motion did not trigger the obligation for a plenary hearing, Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div.), certif. denied, 142 N.J. 455 (1995), because the certifications filed did not present a material factual dispute. "All of the relevant material was supplied to the motion judge . . . at the time of the original application . . . ." Fineberg v. Fineberg, 309 N.J. Super. 205, 218 (App. Div. 1998).  "A plenary hearing would adduce no further facts or information," ibid., as it was undisputed appellant voluntarily moved out of her mother's home to live with her biological father, attended community college part-time, had her expenses paid for by his wife, worked and was under a doctor's care for anxiety and depression.  No other facts were raised.

Appellant argues although she is a legal adult and chose to relocate to her biological father's home, she remains a student and needs financial assistance, now provided by a third party who has no legal obligation to do so.  Appellant has presented no legal authority directly on point to support her claim she is not emancipated under these circumstances.

In cases involving minors or adult children with special needs, we determined "residence by a minor apart from his parents does not by itself result in emancipation." Filippone, supra, 304 N.J. Super. at 311 (citation omitted). We also observed: "Other states have, even more to the point, expressly held that a troubled minor's removal from his parents' home to a public or private institutional alternative or even to the home of friends or relatives does not relieve the parents of their support obligation during minority provided the child is not entirely self-supporting." Ibid. (citations omitted). In L.D. v. K.D., 315 N.J. Super. 71 (Ch. Div. 1998), the Family Part refused to emancipate a nineteen year-old high school student who, with the aid and consent of her mother, the custodial parent, lived in an apartment with roommates so she could finish her studies in the same school district. Id. at 76-77. The court relied on the fact that the child, who had handicaps and disabilities, "was pursuing her senior year of high school [and] was completely financially dependent upon her mother who also utilized the child support paid by her father to finance [the child's] living arrangement." Id. at 77.

We find appellant's situation to be extremely different. Although she provided information about her treatment for depression and anxiety, there was no evidence her issues

interfered with her ability to be independent.  Also, unlike the cases we previously considered, there was no evidence of her parents continuing to provide her with support once she left her mother's home.  Rather, to the extent appellant required any support, she voluntarily relied upon support provided by others who were not under any legal obligation to provide her with anything.

We conclude the Family Part judge correctly determined appellant failed to rebut the presumption of her emancipation.  It was undisputed she voluntary left her mother's home at the age of twenty to live with her biological father.  She simply withdrew from her parents' supervision and control, obtained part-time employment, sporadically attended school and arranged for her support in reliance upon the financial relationship she entered into with her biological father and his wife.  The Family Part correctly found under these circumstances appellant emancipated herself and the motion judge properly applied the law to these facts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                          A-0596-13T1