**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0171-18T2

POLO A. PLUMBING &
HEATING, INC.,

      Plaintiff-Respondent,

v.

CONRAIL DEVELOPERS
LIMITED LIABILITY COMPANY,
a New Jersey Limited Liability
Company,

      Defendant-Appellant/
      Third-Party Plaintiff,

and

WELLNESS and BEAUTY INC.,
d/b/a MOSAIC WELLNESS and
BEAUTY and EKATERINA
ST. ONGE,

      Third-Party Defendants.

_____

Submitted May 11, 2020 – Decided August 3, 2020

Before Judges Messano and Ostrer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3656-16.

Shamy, Shipers & Lonski, PC, attorneys for appellant (Darren M. Pfeil, of counsel; Robert J. MacNiven, on the briefs).

Robbins and Robbins, LLP, attorneys for respondent (Spencer B. Robbins, on the brief).

PER CURIAM

Defendant Conrail Developers, LLC, is a general contractor that subcontracted with plaintiff, Polo A. Plumbing & Heating, Inc., to perform plumbing work at a construction project in Woodbridge. Originally, defendant's principal, Ralph Mocci, also the principal of the property's corporate owner, envisioned commercial spaces on the first floor of the proposed building and office space on the second. However, third-party defendant Ekaterina St. Onge, who owned and ran several day spas, decided to lease the second floor to operate a spa and salon of her design.

It is undisputed that plaintiff prepared two contracts, both dated June 6, 2012, to supply labor for the necessary plumbing, and the parties executed both contracts. The first, executed on July 5, 2012, was for a total of $14,000, and contained a payment schedule that tracked plaintiff's completion of certain work items after an initial deposit of $3000. The second contract, executed more than

six months later on January 29, 2013, was for a total of $32,000, and contained significantly more work items. Defendant was to pay a $5000 deposit, and, again, the balance of payment was tied to plaintiff's completion of various stages of the work. The contracts excluded all plumbing fixtures, any cutting, repairing or removal of the concrete slab for both floors, and any natural gas piping.

Plaintiff did not begin work until after the second contract was executed. In February 2013, defendant made two separate payments to plaintiff of $3000 and $5000, the deposit amounts under each contract. Defendant made additional payments of $2000, the amount due upon completion of the "slab" under the first contract, and $6000, the amount due upon completion of the slab under the second contract, on May 16 and May 22, 2013, respectively.

Plaintiff claimed that it continued to work in accordance with the two contracts. Its principal, Anthony Polonio, testified there were delays in the project attributable to defendant, such that plaintiff could not continue its work after March 2014. This was corroborated to some degree by St. Onge. She testified that after plaintiff had installed the rough plumbing, other contractors working for defendant installed wall studs that were "crooked" and misplaced. New cuts in the slab had to be made to address the situation.

A-0171-18T2

In June 2014, defendant tendered two checks, partial payments for the next amounts due under each contract "after rough" plumbing was complete. Ultimately, plaintiff sought assurances that defendant would make full payment on the outstanding balances on the two contracts, $8000, plus extra charges of $1750 for roof drains plaintiff already installed, before plaintiff would return to the job site.

The record reveals a series of emails and letters exchanged between plaintiff and defendant in attempts to reach an accommodation. The testimony at trial from Polonio and Mocci diverged. Defendant contended the partial payment was made because plaintiff gave assurances it would return to the site and complete all the rough plumbing, and, there were documents in the record supporting plaintiff's commitment. Polonio claimed he wanted assurances the outstanding balance for work already done would be promptly paid before he sent a work crew back to the site. He asserted that defendant still did not have all the necessary supplies available to complete the job.

On July 24, 2014, defendant's attorney sent plaintiff a letter acknowledging there were two "contracts total[ing] $51,150[] and payments

totaling $29,150[] ha[d] already been made."[1] Counsel advised plaintiff that it would be paid upon completion of the rough plumbing in accordance with the contracts and established procedure, but not in advance of its return to the site. Counsel told plaintiff unless it returned to the jobsite within two days, defendant would declare a breach of the contracts. When plaintiff failed to return, counsel sent a second letter terminating the contracts.

Plaintiff filed suit. It claimed that defendant owed $9750 for work that plaintiff completed for which defendant had not paid. Defendant answered and counterclaimed, alleging that it incurred additional expense to fix substandard work plaintiff had already performed and to complete work that remained unfinished. Defendant filed a third-party complaint against St. Onge and her business entities, seeking contribution and indemnification against plaintiff's claim.

The case was tried without a jury. A critical issue at trial was whether there were two separate contracts, as plaintiff contended, or whether the second contract replaced the first, as defendant argued. Another point of contention

---

[1] Polonio claimed there might have been extras that accounted for this difference from the sum of the original contract amounts, but except for $1750 for roof drains, he could not specifically recall. Defense counsel's letter accurately reflected the amount of money defendant had paid to plaintiff.

was whether plaintiff had performed all the work under both contracts to that point and was due payment for having completed the "rough" plumbing.

Defendant asserted there was only one contract and that plaintiff breached the contract by failing to perform. Defendant introduced evidence that it paid other contractors more than $30,000 to correct plaintiff's unprofessional work.

The judge issued an oral opinion in plaintiff's favor and entered judgment for plaintiff in the amount of $7250, plus pre-judgment interest. She also dismissed defendant's counterclaim and third-party complaint against St. Onge.[2] The judge subsequently denied defendant's motion for reconsideration, and this appeal followed.[3]

Before us, defendant contends the verdict was "clearly against the weight of the evidence." Defendant also contends that it established plaintiff breached the contract and failed to mitigate defendant's damages. Defendant urges us to vacate the judgment and remand the matter for a new trial. We have considered these arguments and affirm.

---

[2] Defendant does not appeal the dismissal of its third-party complaint.

[3] We only have defendant's notice of motion for reconsideration, which did not request oral argument, and the judge's order denying the motion. The order contains no written statement of reasons.

A-0171-18T2

Rule 2:10-1 provides: "In both civil and criminal actions, the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court." (Emphasis added). A challenge to a verdict as being against the weight of the evidence is inapplicable to a bench trial. Fanarjian v. Moskowitz, 237 N.J. Super. 395, 406 (App. Div. 1989).

Instead, we review defendant's argument using the proper standard of review following a non-jury trial.

> Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review: "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]"
>
> [Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (alteration in original) (quoting In re Trust Created By Agreement Dated December 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008)).]

"Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

A-0171-18T2

In her oral opinion, the judge found as a fact that the parties entered into two valid contracts and "payments were made by [defendant] under each of the two contracts." There was ample support for this conclusion, given defendant's acknowledgement that it tendered two separate deposits, made two separate interim payments, and made two final partial payments with separate checks. Additionally, defendant's attorney's letter acknowledged the existence of two contracts for a total amount that far surpassed the $32,000 total in the second contract which, defendant asserted at trial superseded the first.

The judge also specifically found that Polonio and his field supervisor, Sidney Schumacher, were credible witnesses. Having excluded defendant from producing expert testimony because it failed to provide any expert report in discovery, the judge rejected defendant's claim that "plaintiff's work was deficient."[4] There was support for this conclusion, too, in the testimony by St. Onge, who was quite critical of the framing inside the proposed spa and the erroneous location of walls and partitions by other contractors that led to delays. The judge also found that defendant "presented no contemporaneous written evidence . . . recording defendant complained about any of plaintiff's plumbing work sa[ve] one mislocated pipe." Indeed, there was no claim in the various

_____

[4] Defendant has not appealed from this in limine evidentiary ruling by the judge.

communications in the record between the parties attempting to have plaintiff return to the site that the work to that point was unacceptable, except for the roof drains, which allegedly did not pass municipal inspection.

In reviewing the findings by the judge, "[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (alteration in original) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). The judge believed plaintiff's witnesses who claimed it had already performed work for which it had not been paid when negotiations about moving forward, broke down. At trial, defendant vigorously cross-examined Polonio as to whether the "rough" plumbing had indeed been completed, or whether there was additional work to be done before the "rough" plumbing was finished and, under the terms of the contract, plaintiff was entitled to the balance of payments. The judge found only that plaintiff conceded defendant was entitled to a $2000 credit for some work which was incomplete, and therefore rendered judgment in plaintiff's favor for $7250.

There is certainly evidence that could support a different result. Polonio's testimony was, at times, confused. Correspondence from defendant during June and July 2014 repeatedly asserted the rough plumbing was not complete and

demanded that plaintiff return to the job site to complete the rough plumbing. There were discrepancies in the permit plaintiff secured from Woodbridge as to the anticipated number of plumbing fixtures that would eventually be installed, compared to the amount of work Polonio claimed was completed. However, we will not "engage in an independent assessment of the evidence as if [we] were the court of first instance." State v. Locurto, 157 N.J. 463, 471 (1999). "Reversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 214 (App. Div. 2015) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). We do not reach that high threshold in this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0171-18T2