**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0846-17T2

L.M.B.,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

M.E.B.,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Argued December 11, 2018 – Decided April 23, 2019

      Before Judges Hoffman and Suter.

      On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1114-13.

      Bonnie C. Frost argued the cause for appellant/cross-respondent (Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys; Bonnie C. Frost, of counsel and on the brief).

      Peter C. Paras argued the cause for respondent/cross-appellant (Paras, Apy & Reiss, PC, attorneys; Peter C. Paras, of counsel and on the brief; Elissa A. Perkins, on the brief).

PER CURIAM

Defendant M.E.B. appeals an order of the Family Part that required him to continue to pay alimony to plaintiff L.M.B. under their Marital Settlement Agreement (MSA) by imputing earnings to him of $300,000 based on the court's finding, without a plenary hearing, that he had not "maximize[d] his efforts to replicate his historical earnings." Plaintiff cross-appealed from the same order on other grounds. We agree with the Family Part judge that the order imputing earnings to defendant did not modify the MSA, that there was no provision in the MSA to retroactively recover alimony payments from plaintiff, and that deferred compensation payments were not a substitute for alimony payments under the MSA. We also find no abuse of discretion with the court's imputation of earnings to defendant and its decision not to grant attorney's fees to either party.

I

Plaintiff and defendant were married for twenty-two years and had two children. They were divorced in January 2014. He was fifty-eight years old at that time. Defendant, a Wharton School graduate, was employed by AIG, Inc., as a senior vice-president who was "head of corporate real estate-strategy and

2

transactions."  Plaintiff was not employed, although their tax returns listed her occupation as a "realtor."

Their very comprehensive MSA, dividing over $8,000,000 in assets, was made a part of their dual judgment of divorce.  Only the alimony provisions of the MSA are at issue in this appeal.

Under the MSA, defendant agreed to pay alimony to plaintiff until he was age sixty-four, which will be in November of 2019.  Paragraph eleven required defendant to pay forty-two percent of his "gross annual earned income irrespective of whether" he was employed at AIG.  The MSA defined "gross annual earned income" to include income derived from defendant's "base salary, bonuses . . . or 'LTIP' plan[1] . . . or any other form of gross annual earned income . . . ."  The parties agreed in the MSA that defendant's base salary at AIG was $300,000 and from 2010 to 2013, his bonuses averaged $194,500.  As a participant in AIG's LTIP, which was a deferred compensation plan, the parties agreed that over the same four year period, the monetization of these deferred compensation grants had averaged $110,000.  Thus, defendant's gross annual earned income at AIG was $604,500.  In contrast, the MSA did not "impute" any

---

[1]  The reference is to a Long Term Incentive Plan.

A-0846-17T2

earnings to plaintiff because she had no "appreciable" income from work outside the home prior to filing the complaint for divorce.

The MSA provided that a change in either party's income would not "constitute a prima facie change of circumstances or otherwise allow any review of or modification of the alimony provisions of the [MSA]." It included an anti-Lepis[2] provision, wherein the parties expressly "envisioned and considered any and all events" including decreases in income and "either party's loss or ability to secure employment." The MSA provided that defendant's obligation to pay forty-two percent of his "gross taxable earned income" would continue whether he was earning more or less when the MSA was executed or whether plaintiff was making more or less. Defendant agreed that if he became unemployed, he would pay forty-two percent of any unemployment compensation.

In paragraph fifteen of the MSA, the parties "contemplate[d] that [defendant would] remain employed through and including his attaining the age of sixty-four . . . commensurate with his educational and professional qualifications." That paragraph then provided as follows:

> The husband will not voluntarily reduce his income prior to his attaining the age of sixty-four . . . . Should the husband's employment with AIG terminate involuntarily, and until he attains the age of sixty-four

---

[2] Lepis v. Lepis, 83 N.J. 139 (1980).

A-0846-17T2

. . . he will <u>maximize his efforts to replicate his historical earnings</u>. <u>However, nothing within this Agreement is intended to or will constitute an agreement between the parties to impute an income to the Husband consistent with his current earnings at AIG</u>.

[Emphasis added.]

Should plaintiff claim that defendant was not in compliance with paragraph fifteen of the MSA, she "reserve[d] the right to make an appropriate application to the [c]ourt," but the parties agreed to submit "any such disputes" to mediation and to mediate in good faith.

Plaintiff received alimony payments in 2014 of $553,842 and in 2015 of $559,121. These are not disputed.

On November 17, 2015, with just one-hour notice, defendant was terminated from his employment with AIG, along with others, in a reduction in force. He was then age sixty.

Defendant claimed that he immediately began efforts to obtain other employment by contacting people he knew in the industry or with whom he had worked. He contacted "head-hunters," used the post-employment services offered by AIG and joined industry related professional groups. He detailed these efforts in his supporting certification. However, by September 2017, he still did not have a job.

A-0846-17T2

Plaintiff claimed that defendant was not making adequate efforts. He had not tried networking through a club in New York for Wharton School graduates. He approached his job search "half-heartedly," turning his AIG layoff into a "premature early retirement at her expense."

Defendant stopped paying alimony in March 2016 when his separation compensation stopped. He paid plaintiff forty-two percent of that and of his unemployment compensation.

Defendant paid plaintiff forty-two percent of the deferred compensation grants that previously vested but were paid after March 2016. This amounted to $508,974 for 2016 and $218,293 for 2017. Defendant considered these to be alimony payments because they were included within the definition of "gross annual earned income" in the MSA. Plaintiff argued these were not alimony payments, but were part of their equitable distribution.

The parties were not successful at resolving their alimony issues through mediation. In August 2017, plaintiff filed a motion to enforce litigant's rights under Rule 1:10-3, claiming defendant violated the MSA by not paying her alimony. She requested that the court impute a gross annual earned income to defendant, based on his historical earnings of $604,500; affix arrearages at $380,835 based on the forty-two percent formula in the MSA; require defendant

to pay all arrearages within ten days or face arrest upon an ex parte application; compel defendant to immediately resume paying alimony pursuant to the MSA; and award her attorney's fees and costs. In the alternative, plaintiff requested that defendant be compelled to maximize his efforts to find employment by reporting all of these efforts to plaintiff in detail and to include her in deciding whether he should accept a particular offer of employment. Plaintiff asked to modify the MSA to extend defendant's alimony obligation beyond his sixty-fourth birthday for the months he did not paid alimony.

Defendant filed a cross-motion, requesting that the court "equitably estop [plaintiff] from seeking to modify the terms and provisions of the [MSA]" and for attorney's fees and costs. If the court were to impute an income to him of $604,500, defendant asked that this be applied retroactively to the date of the MSA in 2013. That then would require plaintiff to remit a portion of the alimony he paid her because his earned income since they divorced was greater than what was contemplated in the MSA. He also requested that plaintiff be restrained from contacting any prospective employers on his behalf.

In his September 22, 2017 order, the Family Part judge granted in part and denied in part the relief requested. Neither party requested a plenary hearing and the judge did not conduct one.

7

The court ordered defendant to pay $10,500 per month in alimony starting on September 2017 until his sixty-fourth birthday unless modified by another court order or agreement of the parties. Defendant consented to maximizing his efforts to obtain employment on a monthly basis and was ordered to do so, although plaintiff was restrained from contacting any prospective employers or applying for any jobs in defendant's name. The court did not order plaintiff to remit any previously paid alimony. Because the court's order enforced the MSA, it denied as moot defendant's request to equitably estop plaintiff from modifying the MSA. The court denied all parties' requests for attorney's fees.

In the accompanying written opinion, the court found that defendant's termination from AIG was involuntary. Under the MSA, he was required to "maximize his efforts to replicate his historical earnings." The court found that defendant failed to do that "based on the facts before it" and without making any credibility determinations. Although defendant certified about positions and companies to which he applied, and submitted "stacks" of paper, "much of the documentation consisted of email exchanges attempting to schedule, and reschedule, meetings, lunches or phone calls with others." The court considered the length of time defendant was unemployed and the evidence in finding defendant had not satisfied his obligation under the MSA.

The court found the MSA permitted earnings to be imputed in that circumstance. The parties had not agreed in the MSA to impute defendant's base salary at AIG. However, because defendant acknowledged pursuing employment approaching a $200,000 salary range, and given his prior bonus opportunities and certain self-employment earnings, the court imputed earnings of $300,000 to defendant and used that figure for defendant's alimony obligation. Forty-two percent amounted to $10,500 per month.

The court did not impute any earnings for the deferred compensation plan because that money was "separate and apart from the 'earnings'" in the MSA. "Any deferred compensation . . . paid out would be in addition to the earnings ordered herein." The court denied plaintiff's request for a retroactive modification of the MSA because that relief lacked any basis in the agreement or in the law.

Defendant appeals the September 2017 order, arguing for the first time that a plenary hearing should have been conducted based on the parties' conflicting certifications. By imputing earnings, defendant asserts the court created a new alimony obligation that did not exist in the MSA even though he had made good faith efforts to obtain employment. He argues that the court's finding that he did not maximize his efforts to replicate his historic earnings was

contrary to an abundance of evidence. He asserts the court erred by using his AIG earnings for imputation purposes and the forty-two percent figure without first considering plaintiff's needs. Defendant claims it was an error to treat defendant's deferred compensation as part of their equitable distribution. Defendant argues the court erred by not ordering a retroactive reimbursement of overpaid alimony.

Plaintiff cross-appealed, asserting the court should have required defendant to pay alimony arrears from March 2016 to August 2017, which amounted to $180,000, and that she should have been awarded attorney's fees.

II

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citations omitted), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The court found defendant had not maximized his efforts to replicate his historical earnings. It made this finding after a "thorough review[]" of all the submissions. Defendant asserted he maximized his efforts, detailing that he worked with executive recruiters, job placement services offered by AIG, had a job coach and networked through professional organizations. He provided documentation that included "inquiries, applications, and verification of interviews."

The court relied on "the facts before it asserted by [d]efendant." The court found that although defendant had submitted "stacks" of papers, "much of the documentation consisted of email exchanges attempting to schedule, and reschedule, meetings, lunches or phone calls with others." By relying on defendant's version of the facts, the court stated it was "not making any credibility determinations." The court took into consideration "the length of time between the end of his employment in 2015 and the current date and the evidence (when considering its nature, kind and amount)" in reaching its determination that defendant had not "satisfied his obligation to maximize his efforts to replicate his historical earnings pursuant to the MSA."

For our purposes, the "general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence."

A-0846-17T2

Cesare, 154 N.J. at 411-12. Reversal is appropriate only when the factual findings prove to be "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Defendant has not shown that the court failed to consider the competent, relevant and reasonably credible evidence to which defendant had certified. The court stated that it thoroughly reviewed the submissions. We are not to substitute our potential interpretation of the facts for the fact-finding of the Family Part judge. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012) (providing that "[i]t is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support the [judge's] decision     . . . .").

For the first time on appeal, defendant asks for a plenary hearing. A plenary hearing is not required for every Family Part matter. See Llewelyn v. Schewchuk, 440 N.J. Super. 207, 217 (App. Div. 2015). Only where the parties' submissions demonstrate there are genuine issues as to material facts must the court conduct a hearing to resolve the dispute. Ibid. (citing Segal v. Lynch, 211

N.J. 230, 264-65 (2012); Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004).

By raising the issue of a plenary hearing for the first time on appeal, defendant deprived the court of the ability to address it. See Liebling v. Garden State Indem., 337 N.J. Super. 447, 465-66 (App. Div. 2001) (providing that we will not "consider matters not properly raised below" unless the issue is of "sufficient public concern"). The issues in this case do not implicate significant public concerns. Moreover, there was no genuine issue of fact about defendant's efforts because the court relied on defendant's version of the facts in concluding he had not maximized his efforts to replicate his historical earnings. We are satisfied based on this analysis that a plenary hearing was not necessary in this case.

Defendant argues that the Family Part judge erred by imputing earnings to him, the effect of which was to modify the MSA by setting an alimony "floor" below which plaintiff's alimony could not drop. We do not agree that this modified the MSA.

Our courts acknowledge a "'strong public policy favoring stability of arrangements' in matrimonial matters." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). Marital

13

settlement agreements "which are fair and just" are enforceable in equity. Petersen v. Petersen, 85 N.J. 638, 642 (1981).

We affirm the Family Part's order that imputed earnings to defendant. This was not a modification of the MSA, but an enforcement of its provisions. Under paragraph fifteen, once defendant did not maximize his efforts to replicate his historical earnings, the next sentence in the paragraph referenced imputation. All that sentence provided was that the parties had not reached an agreement on imputing the AIG base salary, not that imputation was prohibited. We agree with the Family Part judge that the MSA contained one scenario in which earnings could be imputed: where defendant was involuntarily terminated from AIG and did not maximize his efforts to replicate his historical earnings. The court did nothing here except enforce the terms of the MSA.

Defendant contends the court should not have imputed earnings to him of $300,000 because that was his base salary at AIG and the parties agreed in paragraph fifteen not to impute that amount. Defendant is not accurate in his claim that the court set the $300,000 imputed earnings figure based on defendant's AIG salary. Instead, the court considered that defendant pursued positions with salary ranges near to $200,000, but not that these had been offered to or accepted by defendant. This was "suggestive of his earning capacity." In

A-0846-17T2

addition, defendant's "profession and earning capacity" included "bonus opportunities, as well as historical bonuses." Defendant had self-employment opportunities. Considering all of this, the court found it "reasonable and appropriate" to include the capacity for a bonus within the imputed base earnings for total imputed earnings of $300,000.

Imputing the earnings of a spouse "is a discretionary matter not capable of precise or exact determination[,] but rather require[s] a trial judge to realistically appraise capacity to earn and job availability." Elrom, 439 N.J. Super. at 434 (alterations in original) (quoting Gnall v. Gnall, 432 N.J. Super. 129, 158 (App. Div. 2013), rev'd on other grounds, 222 N.J. 414 (2015)). This court "will not reverse the decision absent a finding the judge's decision rested on an impermissible basis, considered irrelevant or inappropriate factors, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Ibid. (citations and internal quotation marks omitted). Trial judges have "'every right to appraise realistically [a spouse's] potential earning power' and examine 'potential earning capacity' rather than actual income" when imputing income. Id. at 435 (citation omitted).

We find no misapplication of discretion in the court's analysis. It determined base earnings and added the opportunity for bonuses and self-

employment in arriving at the imputed earnings amount. All of this was supported in the record. The court did not use the AIG base salary.

Defendant contends the court should not have required him to pay forty-two percent of the imputed earnings to plaintiff and should have explored whether plaintiff had a need for alimony. Plaintiff's application was to enforce the MSA. Defendant's argument to readjust the percentage or explore plaintiff's need would have constituted a modification of the MSA even though the parties very clearly agreed that a change in earnings was not a basis to apply for a modification of alimony. The court enforced the MSA by maintaining the percentage and without reexamining plaintiff's needs.

There also was no provision in the MSA to order retroactively a readjustment of alimony because defendant argued it was overpaid. The court set an imputed amount for earnings once defendant was involuntarily terminated and did not maximize his efforts to replicate his earnings. Defendant's alimony payment in the years where his earnings exceeded what was contemplated in the MSA was simply what he had bargained for in that agreement.

A-0846-17T2

We agree with the court's discretionary determination not to order defendant to pay alimony at an imputed amount prior to September 1, 2017.[3] The court's decision was made as of the time that plaintiff filed her motion for relief.

We agree with the court's order regarding defendant's deferred compensation. To the extent the deferred compensation vested in a prior period and was subsequently paid, that did not make this amount "earnings" under paragraph fifteen.

Finally, both parties contend they should have been awarded attorney's fees. We are satisfied that the court properly considered Rule 4:42-9 and Rule 5:3-5(c) and the factors thereunder in concluding that neither party was entitled to an award of attorney's fees.

After carefully reviewing the record and the applicable legal principles, we conclude that the parties' further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

---

[3] The September 22, 2017 order gave defendant a credit toward his $10,500 obligation for the month of September 2017 for amounts paid as earnings since that date. He was ordered to "continue to pay as his earnings portion of his alimony obligation in the amount of $10,500 per month each month after September 2017 until his 64th birthday unless that amount is modified by other court order or agreement of the parties."

A-0846-17T2

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0846-17T2