**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5465-17T3

NEIL REDNOR,

     Plaintiff-Respondent,

v.

CHRISTINE REDNOR,

     Defendant-Appellant.

_____

Argued January 7, 2020 – Decided April 2, 2020

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-0985-18.

Sadaf Trimarchi, argued the cause for appellant.

Carleen M. Steward argued the cause for respondent (Fruhschein & Steward, LLC, attorneys; Carleen M. Steward, on the brief).

PER CURIAM

Defendant appeals from an order entered by the Family Part on May 9, 2018, which among other things, denied her motion to set aside the parties' marital settlement agreement (MSA); in addition, she appeals from a July 16, 2018 order denying reconsideration. For the reasons that follow, we affirm in part, and reverse in part, and remand for further proceedings.

I.

The parties married in April 1983. They have two adult daughters, Martha,[1] born in 1983, and Melinda, born in 1986. In September 2010, plaintiff filed a complaint for divorce, which he voluntarily dismissed in December 2011. Six days later, on December 22, 2011, plaintiff filed a complaint seeking a divorce from bed and board, pursuant to N.J.S.A. 2A:34-3.

In connection with the divorce proceedings, the court entered a September 6, 2012 consent case management order signed by the parties' attorneys. The order stated, "The children are emancipated"; however, the order also stated, "Defendant alleges that the children's physical and emotional conditions requires continued direct support to the children." At that time, Martha was twenty-eight years old and Melinda was twenty-six years old.

---

[1] We use pseudonyms to maintain the confidentiality of the parties' children. R. 1:38-3(d)(1)(3).

A-5465-17T3

Three months later, in December 2012, Melinda suffered a subarachnoid brain hemorrhage, requiring a sub-occipital craniectomy and placement on a ventilator; in the following days, she had a tracheotomy, a cranial shunt implanted for hydrocephalus, and a feeding tube implanted. Now thirty-three years old, Melinda remains disabled. She has lived with defendant since her release from the hospital following her brain injury.

In June 2013, approximately six months after Melinda's injury, the parties executed their MSA. Regarding support, the MSA contains a section entitled ALIMONY, which required plaintiff to "pay [defendant] $4000 per month" until the death of either party or defendant's remarriage. In the same provision, plaintiff waived "any right or claim to alimony or other form of spousal support from WIFE[,]" and agreed that his waiver would be "non-modifiable regardless of future circumstances," notwithstanding "the provisions of Lepis v. Lepis, 83 N.J. 139 (1980)." Significantly, this anti-Lepis clause[2] applied only to plaintiff's waiver of alimony and support. The MSA clearly stated that defendant

---

[2] An anti-Lepis clause is a provision wherein parties waive modification of alimony based on a change of circumstances. See Morris v. Morris, 263 N.J. Super. 237, 245-46 (App. Div. 1993). Such a clause must clearly state that the change-of-circumstances standard does not apply, or detail how the parties intend to handle modification of alimony requests. Id. at 240.

maintained her right to seek a modification of alimony in the event of a change in circumstances.

While the MSA did not provide for the payment of child support for Melinda, it did obligate plaintiff to "pay Melinda's health insurance premiums until she reaches the age of [thirty]." In addition, the MSA provided that defendant "shall be entitled to claim [Melinda] as a dependency exemption . . . in odd years and [plaintiff] shall be entitled to claim [Melinda] as a dependency exemption . . . in even years." The MSA did not otherwise address the issue of either child's emancipation nor did it acknowledge Melinda's disabled status.

On June 27, 2013, the court held a hearing to consider plaintiff's complaint seeking a judgment of divorce from bed and board. At that hearing, plaintiff testified that Melinda had been emancipated by the time of her injury. While defendant did not directly dispute plaintiff's contention, she testified that Melinda is "not now emancipated" and explained she was taking care of Melinda "[twenty-four] hours a day . . . [seven] days a week." The court found both parties voluntarily entered into the MSA and granted plaintiff a final judgment of divorce from bed and board, incorporating the MSA. On December 7, 2016, the court granted plaintiff's motion to convert the judgment into an absolute divorce.

4

In March 2018, defendant filed the motion under review, seeking "child support, enforcement, and other relief." In support of her request to set aside the MSA, defendant claimed she signed the agreement under duress and based on misrepresentations.

Defendant's attorney[3] apparently misinterpreted the anti-Lepis clause as applying to both parties; as a result, defendant's initial motion did not include a request to increase her alimony. Upon realizing this error during oral argument, defendant's attorney asked the court to consider defendant's motion as a request for increased alimony. The motion judge denied the request, citing defendant's failure "to attach to her motion her prior case information statement from the time of the divorce and her current case information statement, as required by . . . Rule 5:5-4(a)(4)."

Defendant's motion also requested the court to determine that Melinda "be deemed not emancipated by virtue of [her] permanent disability," and sought reimbursement from plaintiff "for his share of out-of-pocket expenses incurred by [defendant] for [Melinda]" since 2013. In addition, defendant sought ongoing support for Melinda, including housing and the establishment of a

---

[3] The attorney representing defendant on this appeal did not represent her at the time of the motions under review.

A-5465-17T3

special needs trust for her. In support of this request, defendant submitted a certification from Dr. Neil Jasey, the Director of Brain Injury Services at Kessler Institute for Rehabilitation, who served as Melinda's treating physician since January 2013. According to Dr. Jasey, Melinda remains disabled from her brain hemorrhage and continues to suffer "deficits in cognition and mobility"; she requires someone to prepare her food and to guide her when using a walker. Regarding the future, Dr. Jasey stated, "It is very unlikely that [Melinda] will be able to work or support herself given her physical limitations."

Defendant further requested the court to direct plaintiff to reimburse all funds plaintiff withdrew from Melinda's bank accounts without her consent. Finally, defendant requested the court to award her "counsel fees . . . under [Rule] 4:42-9(a)."

The motion judge denied all of defendant's requests for relief. In her oral decision, the judge ruled defendant's motion to set aside the MSA based on fraud was not timely under Rule 4:50-1, nor supported by clear and convincing evidence. The judge found defendant had not shown any fraud in connection with the agreement, or that she agreed to the MSA under duress.

The judge also rejected defendant's claim for reimbursement of certain sums that plaintiff allegedly withdrew from Melinda's accounts between January

6

2013 and October 2013. The judge found the claim was barred because some of the withdrawals occurred prior to the date of the MSA. Regarding defendant's request for reimbursement for plaintiff's "share of out-of-pocket expenses" she incurred for Melinda since 2013, the judge ruled that defendant could not come back to court five years later and seek to have plaintiff pay Melinda's expenses "on an ongoing basis from 2013 forward."

The judge also rejected defendant's application for support for Melinda. The judge noted that Melinda suffered her injury in December 2012, approximately six months before the parties agreed to the MSA. The judge found that the parties knew of Melinda's condition when they entered into the MSA, and further noted Melinda previously had been emancipated, citing the September 6, 2012 case management order.

The judge found the parties essentially had addressed support for Melinda in the alimony provision of the MSA. The judge explained,

> [T]he record is clear that when devising the $4000 per month alimony payment [the MSA] was factoring in defendant's cost to have certain living and transportation accommodations or expenses in defendant's column that included [Melinda] solely because [Melinda] was living with the defendant[,] and if [Melinda] needed certain vehicle accommodations and housing accommodations, it was defendant's vehicle or house that had those accommodations and

7

> therefore those were defendant's expenses that were factored when determining the alimony obligation.

Notwithstanding her acknowledgment that the amount of alimony in the MSA factored in the cost for certain living and transportation costs for Melinda, the judge found the MSA precluded defendant from asserting any claim for Melinda's support. The judge ruled that since Melinda was emancipated by the time the parties signed their MSA, if the parties had intended to include child support for her, it should have been expressly stated in the MSA. Because the judge interpreted the MSA as not containing any separate provision for Melinda's support, the judge concluded she could not grant any form of financial relief to defendant, rejecting defendant's argument that N.J.S.A. 2A:17-56.67(e) provides an alternative basis for ordering plaintiff to pay some other form of "financial maintenance" for Melinda. Defendant then filed a motion for reconsideration, which the court denied.

This appeal followed. On appeal, defendant contends the motion judge erred in failing to: 1) set aside the parties' MSA; 2) find Melinda unemancipated; 3) find Melinda eligible to receive "financial maintenance" under N.J.S.A. 2A:17-56.67(e); 4) order plaintiff to reimburse unauthorized withdrawals made from Melinda's bank account; 5) conduct a plenary hearing; and 6) award attorney's fees.

A-5465-17T3

## II.

Our review of the trial court's fact-finding is limited. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. "Accordingly, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal.'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 213-14 (App. Div. 2015) (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)).

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "A trial court's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)). "To the extent that the trial court's decision constitutes

a legal determination, we review it de novo." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013).

A. Requests to Vacate MSA and for Retroactive Reimbursement

To vacate a judgment based on fraud, a party must demonstrate by clear and convincing evidence that the conduct was willfully false, material to the issue, and that the falsity could not have been discovered by reasonable diligence. See Shammas v. Shammas, 9 N.J. 321, 330 (1952); Pavlicka v. Pavlicka, 84 N.J. Super. 357, 366 (App. Div. 1964). Moreover, a movant is entitled to a plenary hearing only after clearly demonstrating the existence of a genuine issue of material fact entitling the party to relief. Lepis, 83 N.J. at 159; Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004).

In support of the motion under review, defendant alleged the MSA "was a fraud. . . . secured in bad faith." Rule 4:50-1(c) expressly governs allegations of "misrepresentation" and "fraud," notwithstanding defendant's attempt to avoid the one-year time bar on such claims by stating she "sought to vacate the MSA under R. 4:50-1(e) and (f)." Rule 4:50-2 requires claims under Rule 4:50-1(c) to be brought within one year of the entry of judgment. Because the absolute judgment of divorce was entered in December 2016, and defendant filed her motion in March 2018, the judge correctly rejected her request to set

10

aside the MSA based on alleged fraud as untimely filed. The judge also correctly concluded defendant failed to support her claim of fraud with substantial credible evidence. We further conclude the judge correctly rejected defendant's request for reimbursement for expenses incurred relating to her care of Melinda dating back to 2013. N.J.S.A. 2A:17-56.23a clearly bars retroactive modification of child support.

B. Defendant's Request for Prospective Support for Melinda

When a party to a comprehensive negotiated property settlement agreement seeks to modify any support obligation, that party must meet the threshold standard of changed circumstances. Lepis, 83 N.J. at 146-48. "Changed circumstances are not confined to events unknown or unanticipated at the time of the agreement." J.B. v. W.B., 215 N.J. 305, 327 (2013), citing Dolce v. Dolce, 383 N.J. Super. 11, 19 (App. Div. 2006).

Emancipation

A child's emancipation is "the conclusion of the fundamental dependent relationship between parent and child . . . [,]" Dolce, 383 N.J. Super. at 17, and is "the act by which a parent relinquishes the right to custody and is relieved of the duty to support a child." Newburgh v. Arrigo, 88 N.J. 529, 543 (1982). The determination of whether a child is emancipated is fact sensitive. Ibid.

A-5465-17T3

Generally, the question of emancipation hinges upon whether the children, have moved "beyond the sphere of influence" of their parents and have the ability and responsibility to support themselves as adults. Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997) (quoting Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995)).

Emancipation is that point at which "the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support." Filippone, 304 N.J. Super. at 308. Although our law presumes a child is emancipated upon attaining majority, parents can bind themselves "by consensual agreement, voluntarily and knowingly negotiated, to support a child past majority, and such agreement is enforceable if fair and equitable." Dolce, 383 N.J. Super. at 18. When parents do so, "the parental obligation is not measured by legal duties otherwise imposed, but rather founded upon contractual and equitable principles." Ibid.

In an August 30, 2018 written opinion amplifying her prior rulings, the motion judge provided the following explanation for denying defendant's request that Melinda "be deemed not emancipated" by virtue of her permanent disability: "Subsequent to Melinda becoming injured, the [c]ourt record is silent of either party advising the [c]ourt that [Melinda] was no longer 'emancipated'

12

as stated in the September 6, 2012 consent [c]ase [m]anagement [o]rder." However, contrary to this finding and as previously noted, defendant confirmed on June 27, 2013 that Melinda is "not now emancipated" and "is unable to care for herself." Defendant told the court she was taking care of Melinda "[twenty-four] hours a day . . . [seven] days a week."

We conclude the judge erred by ruling that Melinda was emancipated solely based on one sentence in the September 6, 2012 case management order, especially where the order contained language disputing emancipation. In the face of conflicting evidence regarding whether Melinda was emancipated at the time of the September 6, 2012 case management order, and the compelling evidence of Melinda's disabled status when the parties signed the MSA, we conclude defendant's request to deem Melinda "not emancipated" warranted a plenary hearing. The judge failed to recognize that material facts remained in dispute and that evidence beyond the motion papers was necessary for proper resolution of the matter, that could not be determined without a plenary hearing. Fusco v. Fusco, 186 N.J. Super. 321, 329 (App. Div. 1982).

### N.J.S.A. 2A:17-56.67

On January 19, 2016, the Legislature enacted a new statute regarding termination of a parent's obligation to pay child support, N.J.S.A. 2A:17-56.67,

13

which formally went into effect on February 1, 2017.  Regarding child support

for a child who turns twenty-three years of age, the new statute provided, in

pertinent part:

> a. Unless otherwise provided in a court order or judgment, the obligation to pay child support shall terminate by operation of law without order by the court on the date that a child marries, dies, or enters the military service.  In addition, a child support obligation shall terminate by operation of law without order by the court when a child reaches [nineteen] years of age unless:
>
> (1) another age for the termination of the obligation to pay child support, which shall not extend beyond the date the child reaches [twenty-three] years of age, is specified in a court order;

Notwithstanding this language precluding child support obligations from

extending beyond a child's age of twenty-two, in the concluding paragraph of

the statute, the Legislature made clear it did not intend to preclude disabled

children beyond the age of twenty-three from seeking support from their parents.

Subparagraph (e) provides, in relevant part, that nothing in this section shall be

construed to:

> (1) prevent a child who is beyond [twenty-three] years of age from seeking a court order requiring the payment of other forms of financial maintenance or reimbursement from a parent as authorized by law to the extent that such financial maintenance or reimbursement is not payable or enforceable as child

support as defined in section 3 of P.L.1998, c.1 (C.2A:17-56.52); or

(2) prevent the court, upon application of a parent or child, from converting, due to exceptional circumstances including, but not limited to, a mental or physical disability, a child support obligation to another form of financial maintenance for a child who has reached the age of [twenty-three].

The language of the statute reflects the intent of the Legislature that a parent will not pay "child support" to the other parent for a child who is [twenty-three] years or older. The Legislature, however, left the door open, in exceptional circumstances, for the court to convert a child support obligation to some other form of "financial maintenance" for such child.

While the parties' MSA did not require plaintiff to make monetary child support payments for Melinda, it did require him to support her by paying "Melinda's health insurance premiums until she reaches the age of [thirty]." The MSA further provided the parties would alternate years in which they would claim Melinda as a dependent.[4] Notwithstanding these provisions evidencing plaintiff's support of Melinda and her dependence upon both parents, the motion judge rejected defendant's request to utilize N.J.S.A. 2A:17-56.67 as a basis for

---

[4] To claim Melinda as a dependent, plaintiff needed to provide over one-half of Melinda's support. See The Internal Revenue Code, 26 U.S.C. § 152(a)(1).

requiring plaintiff to make payments for Melinda's support. The judge reasoned, "Since [Melinda] was previously emancipated by the parties in connection with their underlying divorce and since [Melinda] did not sustain her disability prior to reaching the age of [nineteen], there is no relief available to defendant under . . . N.J.S.A. 2A:17-56.67."

We conclude the motion judge mistakenly construed N.J.S.A. 2A:17-56.67 as requiring a weekly child support obligation to trigger its application. We discern no basis for imposing such a condition. The judge also gave undue weight to the September 6, 2012 case management order, which contained inconsistent provisions, declaring the children "emancipated" while confirming defendant's contention "that the children's physical and emotional conditions requires continued direct support." As noted, the MSA inexplicably did not confirm the emancipation of either child, nor did it acknowledge or address Melinda's disabled status, except to provide for the payment of her health insurance and alternate her dependence exemption.

"[N]othing in the law, and no principle of public policy prevents a parent from freely undertaking to support a child beyond the presumptive legal limits of parental responsibility." Dolce, 383 N.J. Super. at 18. Here, plaintiff agreed "to pay Melinda's health insurance premiums until she reaches the age of

16

[thirty]." It appears the motion judge interpreted the MSA as barring defendant from seeking additional support for Melinda. We reject the conclusion that defendant could contract away Melinda's right to seek additional support from her father.

"The purpose of child support is to benefit children, not to protect or support either parent. Our courts have repeatedly recognized that the right to child support belongs to the child, not the custodial parent," J.S. v. L.S., 389 N.J. Super. 200, 205 (App. Div. 2006), and "may not be waived by a custodial parent . . ." Gotlib v. Gotlib, 399 N.J. Super. 295, 305 (App. Div. 2008) (quoting L.V. v. R.S., 347 N.J. Super. 33, 41 (App. Div. 2002)). As such, "the parental duty to support a child may not be waived or terminated by a property settlement agreement." Patetta v. Patetta, 358 N.J. Super. 90, 95 (App. Div. 2003); see also J.B., 215 N.J. 329 ("reemphasiz[ing]" that the right to child support belongs to the child); Martinetti v. Hickman, 261 N.J. Super. 508 (App. Div. 1993) (finding the right to child support was not barred by a property settlement agreement providing for the termination of support when the child turned eighteen).

The MSA was not dispositive of plaintiff's child support obligation because the right to child support belonged to Melinda and not defendant. J.S., 389 N.J. Super. at 205. Contrary to the judge's ruling, the MSA could not

deprive Melinda of a right to support to which she may otherwise have been entitled. Patetta, 358 N.J. Super. at 95-96. Like with the emancipation issue, the judge failed to recognize that material facts remained in dispute, requiring a plenary hearing. Fusco, 186 N.J. Super. at 329.

C. Request for Reimbursement of Unauthorized Withdrawals

We also conclude the motion judge erred by rejecting defendant's claim for reimbursement of monies plaintiff withdrew from Melinda's accounts from January 2013 to October 2013. The parties agreed to the MSA in June 2013. Defendant's signing of the MSA in June 2013 could not serve to waive her right to contest unauthorized withdrawals made after the signing of the MSA. In addition, defendant's signing of the MSA would preclude her from challenging earlier unauthorized withdrawals from the account only if the court concludes that she knew, or should have known, of the earlier withdrawals when she signed the MSA. We conclude this issue also requires a plenary hearing to determine if plaintiff made unauthorized withdrawals from Melinda's accounts after the date of the MSA.

We therefore vacate that portion of the motion court's order that denied defendant's request for support for Melinda, based upon her being deemed not emancipated, as well as that portion of the court's order that denied defendant's

A-5465-17T3

request for "financial maintenance," under N.J.S.A. 2A:17-56.67. We also vacate the motion court's denial of defendant's request to compel plaintiff to reimburse Melinda's account for unauthorized withdrawals. We remand this matter for a plenary hearing to address these issues. Since the motion judge's decision to deny defendant's request for attorney's fees was based in significant part upon the judge's determination that defendant's requests all lacked merit, we also vacate that ruling and remand that issue for further consideration, following the outcome of the plenary hearing.

Before proceeding on remand, the court should consider whether this matter warrants the appointment of a guardian ad litem to assist the court in addressing the issues presented. See J.B., 215 N.J. at 332-33. We acknowledge, of course, the decision to appoint a guardian ad litem is reposed in the discretion of the trial court. Id. at 333.

Affirmed in part, and vacated and remanded, in part, to the motion court for further proceedings in conformance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION