**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1582-18T2

MARKO PARIS,

     Plaintiff-Respondent,

v.

ENGEL INVESTMENTS, LLC,

     Defendant-Appellant.

_____

          Submitted November 7, 2019 – Decided January 23, 2020

          Before Judges Koblitz, Whipple and Gooden Brown.

          On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. DC-012183-18.

          Scott E. Becker, attorney for appellant.

          Marko Paris, respondent pro se.

PER CURIAM

In this landlord-tenant matter, defendant-landlord Engel Investments, LLC appeals from a November 2, 2018 Law Division judgment in favor of plaintiff-tenant Marko Paris for $5490.88. The judgment was entered following a bench trial, during which the trial court found defendant violated the Security Deposit Act (SDA), N.J.S.A. 46:8-19 to -26, "intended to protect tenants from overreaching landlords who seek to defraud tenants by diverting rent security deposits to their own use." Reilly v. Weiss, 406 N.J. Super. 71, 83 (App. Div. 2009). Because the trial court's findings are supported by substantial credible evidence in the record, we affirm.

We glean these facts from the record. Defendant is the owner and operator of an apartment building located in Elizabeth. Construction of the building was completed sometime in 2015, and plaintiff was the first occupant of Unit 301, beginning on July 1, 2015. Plaintiff's monthly rent was $1710. Prior to taking possession, plaintiff paid defendant a security deposit of $2565 and a $200 key deposit.

Sometime in 2018, plaintiff notified defendant he would be vacating the apartment, effective June 30, 2018. As a result, on June 30, 2018, defendant's property manager conducted a walk through with plaintiff to inspect the condition of the apartment. A Condition of Rental Property Checklist (checklist)

was prepared by the property manager during the walk-through, listing "excessive damage" in several areas, including "burn mark on wall," "excessive holes [and] damage to wall," "[e]xcessively stained carpet," "excessive burns penetrating seal" on "deck-balcony['s] rubber decking," as well as a "dented/damaged" stove and "damaged [door] frame." The checklist also listed "excessive grout" and "excessive dirtiness." Following the walk-through, plaintiff signed the checklist.

Within thirty days of vacating the premises, plaintiff received a letter (the letter) from defendant indicating that plaintiff's total security deposit of $2854.44, which included $89.44 in interest, was being withheld and used in connection with "damage, cleaning, and repairs" to the apartment. According to the letter, the damages totaled $4225, and plaintiff owed defendant a balance of $1370.56, representing the amount by which the damages exceeded the security deposit. Specifically, the letter listed a charge of 1) $1550 for "excessive wear and tear to walls, sheetrock repairs, [and] holes in the walls," requiring "repaint, respackle, sand[,] and repair;" 2) $275 for "damage/dent to brand new stainless steel stove;" 3) $1250 for "excessive burn marks on carpet" requiring "complete[] replace[ment];" 4) $900 for "excessive wear and tear and burn marks on [the exterior balcony's] liner/rubber decking" requiring

"patch[ing] areas and replace[ment] to prevent water infiltration[;]" and 5) $250 for "clean[ing] and fumiga[tion] due to overwhelming marijuana and smoke scent" and "over excessive wear and tear [to] entire apartment."

In an August 3, 2018 letter to defendant, plaintiff contested the deductions and requested the return of the entire security deposit. When defendant failed to comply, plaintiff filed a complaint against defendant in the Special Civil Part seeking $6548.68, representing double the withheld security deposit "plus storage rent for [four] months." Defendant filed a contesting answer, including an affirmative defense, and a counterclaim for $1370.56 for the damages that exceeded the security deposit.

During a November 2, 2018 bench trial, Samuel Engel, a licensed builder, contractor, and partner in Engel Investments, LLC, testified for defendant. Engel accompanied the property manager and plaintiff during the walk-through, and testified that the items listed in the checklist were beyond normal wear and tear. Engel also submitted photographs, which were admitted into evidence, purportedly depicting burn marks in the carpet[1] and the walls, which Engel believed were created by marijuana or cigarettes. According to Engel, he had

---

[1] When pressed on cross-examination about the purported burn marks in the carpet, Engel explained that the carpet cleaner he "hired . . . to try to save the[] carpets" told him "they [were] burn marks[.]"

detected the odor of marijuana in plaintiff's apartment, and had responded to numerous tenant complaints about marijuana odor emanating from the apartment.

Additionally, Engel provided an invoice totaling $4520.75 from the subcontractor hired to make the repairs on the apartment. According to Engel, the subcontractor "replaced the flooring[,]" "repaired, spackled, and repainted the apartment[,]" "refaced the exterior deck[,]" "installed the range and fridge, stainless steel face plates," and "fumigate[d], . . . clean[ed] . . . [and] deodorize[d] the apartment." Engel testified the charges listed in the letter were based on the charges contained in the subcontractor's invoice.

Plaintiff "disput[ed] all of the damages" and testified defendant "grossly exaggerated" and "overestimated" the repairs. According to plaintiff, during the walk-through, he had disputed most of the items noted on the checklist, but signed it because "there was no cost associated" with the items listed and because "[i]t would have been a waste of both of [their] times" to argue over the items. To support his testimony, plaintiff also submitted photographs to the court to show that any damage constituted "normal wear and tear." Specifically, plaintiff asserted that the purported "burn marks on the carpet" were actually "spills . . . ranging in different sizes[,]" none of which "penetrat[ed] through the

5

carpet." Similarly, plaintiff stated that what defendant had characterized as "burns mark[s]" on the walls were actually "smudges" or "scuff" marks. Plaintiff explained that if burn marks had actually been caused by "cigarettes or otherwise" as defendant claimed, there would have been a "uniform pattern . . . a finger size in diameter." While plaintiff admitted "there was a scratch on [the stainless steel stove,]" he stated it was "no [larger] than a quarter."

Following the trial, the judge determined defendant failed to meet its burden of proof to sustain its claim for damages. The judge credited plaintiff's testimony over Engel's, and found defendant failed to provide evidence that there was excessive damage to the apartment beyond "normal wear and tear." Addressing each charge in turn, the judge rejected defendant's claim for $1550 to repair the walls, explaining that the photographs "[did] not in any way, shape, form or fashion show . . . excessive damage . . . or excessive holes in the walls." Instead, defendant's photograph "show[ed] . . . what appear[ed] to be smudges" and "minor picture frame holes in the wall," representing "normal wear and tear" after a three-year tenancy.

Regarding the $275 charge for the stove, the judge noted that "plaintiff did not dispute that there was damage to [the stove]," which the judge described as a "small circular dent[,]" "maybe a[n] inch in length[,]" and "not that

noticeable[.]" The judge pointed out that although defendant "only replaced the manifold part of [the stove]," rather than " the whole stove," defendant "did not provide the [c]ourt with any proof" of the "exact[]" cost to "just [replace] that manifold piece." Thus, without "receipts from a[] Home Depot, or Lowe's or any other vendor," the judge found $275 to be "excessive just for that small part to be replaced" and reduced the charge to "$150."

Addressing the $1250 charge for replacing the carpet due to purported burn marks, the judge found plaintiff's testimony that they were "just stains to be more credible than . . . defendant's testimony that [they were] actually burn marks." To support his decision, the judge pointed out that the photograph "[did] not show . . . burn marks[,]" and the checklist did not "mention that the carpet had burn marks" but instead indicated that "[there] were stains on the carpet."

Turning to the $900 charge for replacing the balcony's rubber decking, the judge found defendant provided "no evidence to support []his claim" that "plaintiff damaged the outer lining or the rubber decking, . . . to the tune of $900" through "excessive burn marks." The judge found it "perplex[ing] that everything in th[e] checklist" was referred to as "excessive," and found

plaintiff's testimony that "there [was] no damage to the balcony" more "credible."

Finally, regarding the $250 charge for cleaning and fumigating the apartment due to overwhelming marijuana odor, the judge rejected the claim as "disingenuous" and lacking credibility. The judge explained that defendant's claim that "there were complaints" about plaintiff "continuously smoking marijuana in the apartment for at least three years" was belied by the fact that there was no evidence of plaintiff being served with "a notice to cease and a notice to quit as a result" of these alleged complaints.

Accordingly, the judge determined defendant was only entitled to a $150 deduction from the security deposit to replace the dented part on the stove. Accounting for interest, the judge determined that the total amount due plaintiff was $2704.44, and, pursuant to the SDA, N.J.S.A. 46:8-21.1, doubled the recovery to $5408.88. The judge entered a conforming judgment for double the security deposit plus court costs, totaling $5490.88, and dismissed defendant's counterclaim. This appeal followed.

Our scope of review of a trial judge's findings in a bench trial is limited, and deference is given to the judge's factual determinations, as long as they are supported by substantial credible evidence in the record. Rova Farms Resort,

Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974).  While we review the trial court's interpretation of law de novo, Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), we do not "engage in an independent assessment of the evidence as if [we] were the court of first instance[.]"  State v. Locurto, 157 N.J. 463, 471 (1999).  Thus, we will "not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence[.]" Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)).

As a result, "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are . . . manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence. . . ."  In re Tr. Created By Agreement Dated Dec. 20, 1961 ex rel. Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms, 65 N.J. at 484). Indeed, "[r]eversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'"  Llewelyn v. Shewchuk, 440 N.J. Super. 207, 214 (App. Div. 2015) (quoting N.J. Div. of Youth and Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).  "Consequently, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings,

'its task is complete and it should not disturb the result[.]'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)).

The SDA "'recognizes that the security deposit remains the tenant's money, although it is designed to provide some protection from loss to the landlord.'" Hale v. Farrakhan, 390 N.J. Super. 335, 342 (App. Div. 2007) (quoting MD Assocs. v. Alvarado, 302 N.J. Super. 583, 586 (App. Div. 1997)). The burden of proof is on the landlord to show it had reason to retain the security deposit or some portion of it. Veliz v. Meehan, 258 N.J. Super. 1, 5 (App. Div. 1992). To that end, the landlord must prove it suffered damages because the "landlord is in a superior position to advance such proofs." Ibid. Any amount retained by the landlord is limited to actual damages or charges. Watson v. United Real Estate, Inc., 131 N.J. Super. 579, 582 (App. Div. 1974). Any additional amount retained by the landlord is wrongful, entitling the tenant to double recovery under the SDA. Id. at 582-83.

Defendant argues "many of the [judge's] findings . . . were not supported by any evidence in the record, credible or otherwise." Defendant asserts the judge "discounted or totally ignored" claims "such as the odor of marijuana," although plaintiff never denied the claim, and ignored damage to "the balcony

10

membrane," despite the fact that Engel testified about the damage and the need for replacement. Defendant also contends the judge "reduced the value of the . . . face plate of the oven . . . based on nothing." On the contrary, the judge addressed each claim in turn, crediting plaintiff's testimony and rejecting defendant's characterization of the damages as lacking credibility. Because defendant failed to prove it incurred damages in the amounts indicated in the letter, the judge correctly found that, other than $150 for the stove part, the balance of the security deposit retained by defendant was wrongful, entitling plaintiff to double recovery under the SDA. The judge's findings were based on his ability to assess credibility, could reasonably have been reached on sufficient credible evidence in the record as a whole, and adequately support the judgment rendered at trial. Thus, we discern no basis to disturb the result.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1582-18T2