**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0484-22

LAURA PERRY BENCIVENGA,

    Plaintiff-Appellant,

v.

BARRETT D. BENCIVENGA,

    Defendant-Respondent.

_____

Argued December 6, 2023 – Decided January 8, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-2207-16.

Jacqueline M. Printz argued the cause for appellant (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Jacqueline M. Printz, of counsel and on the briefs; Dennis F. Feeney, on the briefs).

Betsy W. Bresnick argued the cause for respondent (Skoloff & Wolfe, PC, attorneys; Betsy W. Bresnick and Paul Salvatoriello, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Laura Perry Bencivenga appeals from an October 7, 2022 Family Part order denying her motion to deem the parties' twenty-three-year-old child, R.B.[1] unemancipated based on her medical, mental, and emotional health issues. Plaintiff also appeals from the denial of her motion to modify the parties' marital settlement agreement (MSA) to require defendant Barrett D. Bencivenga to pay child support directly to plaintiff under N.J.S.A. 2A:34-23(a), or alternatively to require both parties to provide financial maintenance for R.B. pursuant to N.J.S.A. 2A:17-56.67(f)(2) and (3).

On appeal, plaintiff argues the judge erred in denying the applications without addressing R.B.'s recent sixty-seven-page neuropsychological evaluation, denying both parties' requests for oral argument without providing a reason in contravention of Rule 5:5-4(a)(1), and not conducting a plenary hearing. We agree with plaintiff's contentions that a plenary hearing is necessary, and therefore reverse and remand this application to the Family Part for a plenary hearing.

---

[1] We use initials to protect the identity and confidentiality of the child.

A-0484-22

I.

The parties were married in 1990 and have two children. Caroline was born of the marriage and is emancipated. R.B., now aged twenty-four, was adopted when she was eighteen months old. R.B. has been treated for emotional and mental health issues since she was three years old. She has been diagnosed with static encephalopathy, generalized anxiety disorder, oppositional defiant disorder, intermittent explosive disorder, mood disorder, borderline personality disorder, and panic disorder. By the age of eleven, R.B. had three inpatient psychiatric hospitalizations due to suicidal ideation. She was placed in residential schools from ages eleven to fourteen, and in therapeutic schools from ages fourteen to eighteen.

A final judgment of divorce incorporated the parties' MSA, which was entered on April 27, 2017. R.B. was eighteen years old at the time and a senior in high school. Paragraph 4.1 of the MSA states:

> It is agreed between the parties that [R.B.] presently plans to enlist in the Navy. If she does so, she will be deemed emancipated. **If [R.B.]'s plans change and she does not join the Navy, then and in that event, the parties shall confer to determine her status, what her plans are, and whether there is a child support obligation.** If there is any child support obligation or other expense including, but not limited to education, those expenses **shall be divided evenly** between the parties.

A-0484-22

[(Emphasis added.)]

Paragraph 10.1 of the MSA, pertaining to life insurance, provides:

> Should [R.B.]'s plans change and **should she be deemed unemancipated for any reason**, including pursuing post[-]high school education, then the obligation of the parties to maintain life insurance and health insurance for [R.B.] shall be revisited and resolved.

[(Emphasis added.)]

Paragraph 6.1 of the MSA addresses emancipation and provides in pertinent part:

> The children shall be deemed emancipated upon the first of the following events to take place, . . .
>
> (d) The Child's twenty-third (23rd) birthday; . . .
>
> (f) Permanent residence away from the custodial parents. A residence at a boarding school, camp or college shall not be deemed a residence away from Laura's or Barrett's residence sufficient to constitute emancipation.

R.B. graduated from high school and planned on entering the Navy but was denied entrance and could not enlist because she failed a drug screening test. After R.B. was rejected by the Navy, the parties agreed there was no child support obligation for her, and they allowed R.B. to make her own decisions, including living where she wanted. R.B. was sexually assaulted when she was

4

eighteen years old. From that time to the present, she has experienced homelessness, sleeping in her car, or at friends' homes.

In November 2019, then twenty-year-old R.B. underwent a court-ordered inpatient psychiatric hospitalization due to suicidal ideation and an "active suicide plan." After she was released, she received outpatient psychiatric treatment from November 2019 to March 2020. Since March 2020, R.B. has received treatment from Dr. David Holbrook, a psychiatrist, who provides psychopharmacology and psychotherapy services. On August 14, 2020, R.B. was approved for Social Security Disability (SSD) benefits. As of July 2022, R.B. receives $872.25 per month because she is considered "in transition" due to her lack of a permanent residence. Other than SSD benefits and medical and dental insurance R.B. receives from defendant's employment, plaintiff pays all of R.B.'s expenses.

R.B. has not held a steady job. On June 20, 2022, Dr. Holbrook summarized R.B.'s mental health issues and opined:

> [R.B.] is **clearly incapable** of managing most of her own affairs and has been and continues to be **incapable of maintaining employment** due to her extreme impulsivity, irritability, and anxiety. This is thoroughly demonstrated by her history to date. **Her prognosis is guarded**. I do believe she has the potential for improvement over time with supportive psychotherapy.

A-0484-22

> Improvement will almost certainly be slow rather than rapid.
>
> [(Emphasis added.)]

Plaintiff's relationship with R.B. has been estranged. On June 24, 2022, R.B. reported to neuropsychologist Dr. Jonathan H. Mack that she "has been staying at a friend's house," "was sleeping in her car," and intended to live with her mother, but "she tends to fight" and when R.B. fights back, she's the "asshole" and got "kicked out" of plaintiff's home. R.B. told Dr. Mack that she couldn't handle plaintiff's "mental bull****."

Since the divorce, plaintiff used marital funds to pay for R.B.'s expenses that had been earmarked for Carolyn's college expenses. After those funds were depleted, plaintiff sought financial assistance from defendant. In a June 29, 2022 email to defendant, plaintiff stated:

> I need to have a formal agreement that states regardless of [R.B.]'s age, you will continue to provide support as long as the conditions we agree to are met . . . [including] agreement to any behavioral plans/rules we put in place when she is living [in] a place we are paying for.
>
> I also want to "stop the clock" with her pending [twenty-third] birthday as a condition of emancipation.

The parties did not reach a consensus on this issue. Consequently, on July 12, 2022, plaintiff filed a motion seeking an adjudication that R.B. is not

6

emancipated; to compel defendant to pay child support directly to plaintiff under N.J.S.A. 2A:34-23(a); to require defendant to contribute towards R.B.'s expenses; to apportion R.B.'s expenses between the parties based on their financial circumstances; to require defendant to file an updated case information statement (CIS); and to enforce § 10.1 of the MSA and compel defendant to provide proof of life insurance he is supposed to maintain for R.B. Alternatively, plaintiff sought contribution from defendant for financial maintenance for R.B., pursuant to N.J.S.A. 2A:17-56.67(f)(2) and (3); to establish a special needs trust for R.B.; and for counsel fees and costs.

On September 22, 2022, defendant filed a notice of cross-motion seeking to deny plaintiff's motion and declare R.B. emancipated effective as of the date she graduated from high school in June 2017. On September 27, 2022, plaintiff's counsel requested an adjournment of the pending motions because she was awaiting an updated report from Dr. Mack, who evaluated R.B. on June 24, 2022. The judge denied the adjournment request and indicated the motions would be decided on the papers.

Dr. Mack's report was completed on September 29, 2022, and submitted along with plaintiff's reply certification to the judge and adversary that same day. In his report, Dr. Mack stated:

It is this examiner's opinion that [R.B.] has essentially, somewhat, fallen through the cracks of the system due to her being bright enough that she should be able to function on an intellectual basis but with her functioning sabotaged by her ongoing irritative brain lesions diagnosed beginning at the age of [ten] or [eleven], and even prior, causing the totality of the above-cited diagnostic conditions that render her, essentially, unable to function as an adult at this time. At some point, if the situation with [R.B.] does not improve, or deteriorates, a guardianship assessment may be necessary to determine if she meets full criteria for an incapacitated person. At this point, however, it is clearly evidenced that she is not able to function without ongoing and extreme parental support due to the fact that [R.B.] is not able to reach independent status due to her preexisting disabilities that have actually worsened over time.

Dr. Mack concluded:

Based on the totality of the evidence available to me, it is this examiner's opinion that [R.B.] . . . is not able to function independently across the conceptual, social, and practical domains of adaptive behavior as a consequence of all the above-cited diagnoses. [R.B.] has deteriorated neuropsychologically from her performance in 2013. She was judged to be a danger to herself in 2019. She has been intermittently homeless. As much as she says she wants to [be] independent, she is unable to be based on her inability to support herself, her emotional and behavior instability, her poor response to lifelong treatment, and consequently, is not out of the sphere of influence of her parents due to incapacity in terms of judgement [sic], a behavioral dyscontrol, inability to sustain and hold a job, extreme emotional lability, emotional instability, a markedly impaired frustration tolerance, with failure at the age of

> [twenty-three] to develop stable peer relationships, inability to be independent from a financial perspective due to inability to work, and diagnoses causing [R.B.] to continue to need ongoing parental support and supervision due to the above-cited diagnostic conditions.

Dr. Mack diagnosed R.B. with other specified neurodevelopmental disorder; language disorder; attention deficit hyperactivity disorder; specific learning disorder; personality change; frontal lobe and executive function deficit; chronic pain disorder; insomnia disorder; borderline personality disorder; major depressive disorder; post-traumatic stress disorder; panic disorder; and cannabis use disorder.

Since January 2021, plaintiff certified she incurred $200 to $500 per month in additional expenses for R.B. In plaintiff's CIS filed with her application, she claimed R.B.'s estimated Schedule A, B, and C expenses are $3,131 per month.

On October 7, 2022, the judge decided the motions without conducting oral argument as requested by the parties.[2] The judge denied plaintiff's motion and granted defendant's cross-motion to emancipate R.B. In her statement of reasons incorporated with the order, the judge noted R.B.` did not enlist in the

---

[2] The order entered on October 7, 2022, erroneously states the judge considered the arguments of the parties.

A-0484-22

Navy after graduating from high school, and "neither parent has paid child support since R.B.'s eighteenth . . . birthday." The judge found "since her graduation from high school[,] R.B. has not permanently lived with either parent." In her conclusion, the judge stated R.B. "is out of the parties' sphere of influence and control" and "the fact . . . [p]laintiff chooses to pay for medical expenses for the child does not obligate . . . [d]efendant to pay support." The judge did not consider or reference Dr. Mack's report in her statement of reasons. This appeal followed.

## II.

We consider whether plaintiff is entitled to a plenary hearing on her motion. Plaintiff seeks a plenary hearing to determine whether R.B. is emancipated or not, and if not, whether both parties should provide financial maintenance for R.B. pursuant to N.J.S.A. 2A:17-56-6(f)(2) and (3). Plaintiff contends R.B. has struggled with mental and emotional health issues since her early childhood; the MSA reflected the uncertainty of R.B.'s future independence and uncertain emancipation; R.B.'s mental and emotional health worsened after high school; her treating psychiatrist, Dr. Holbrook, provided the report supporting her request for SSD benefits; Dr. Mack opined that R.B. is

A-0484-22

disabled and unable to function as an adult; and plaintiff and R.B. need financial assistance from defendant to defray R.B.'s expenses.

Although we apply an abuse of discretion standard to a trial court's determination regarding the need for a plenary hearing, Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015), we conclude the judge was mistaken when denying plaintiff's request for a plenary hearing. This record reflects disputed facts, and expert opinions from Drs. Mack and Holbrook, such that the parties should have been given a brief period for discovery and, absent an agreement, the opportunity to present the issues for the court's resolution at a plenary hearing. Conforti v. Guliadis, 128 N.J. 318, 322 (1992) (quoting Conforti v. Guliadis, 245 N.J. Super. 561, 565 (App. Div. 1991)); see also Tretola v. Tretola, 389 N.J. Super. 15, 20 (App. Div. 2006) (reversing an emancipation order and requiring a plenary hearing because the court failed to recognize material facts in dispute and evidence beyond the motion papers necessary for resolution of the matter).

A child's emancipation is "the conclusion of the fundamental dependent relationship between parent and child . . . [,]" Dolce v. Dolce, 383 N.J. Super. 11, 17 (App. Div. 2006), and is "the act by which a parent relinquishes the right to custody and is relieved of the duty to support a child." Newburgh v. Arrigo, 88 N.J. 529, 543 (1982). The determination of whether a child is emancipated

is fact sensitive.  Ibid.  Generally, the question of emancipation hinges upon whether the child has moved "beyond the sphere of influence" of their parents and has the ability and responsibility to support himself or herself as adults. Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997) (quoting Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995)).

Although our law presumes a child is emancipated upon attaining majority, parents can bind themselves "by consensual agreement, voluntarily and knowingly negotiated, to support a child past majority, and such agreement is enforceable if fair and equitable."  Dolce, 383 N.J. Super. at 18.  When parents do so, "the parental obligation is not measured by legal duties otherwise imposed, but rather founded upon contractual and equitable principles."  Ibid.

In her statement of reasons, the judge here ignored two recent medical reports about R.B.'s condition.[3]  Plaintiff maintains Dr. Mack opined that R.B.'s

---

[3] Plaintiff's merits brief indicates this argument was not raised below.  It is well settled that we will not consider questions or issues not raised before the trial court unless the questions raised pertain to the trial court's jurisdiction or concern a matter of great public interest.  State v. Robinson, 200 N.J. 1, 20 (2009).  But this "limitation on the scope of appellate review is not absolute." Ibid.  "[O]ur trial and appellate courts are empowered . . . to acknowledge and address trial error if it is 'of such a nature as to have been clearly capable of producing an unjust result.'"  Ibid. (quoting R. 1:7-5).  "Further, our appellate courts retain the inherent authority to 'notice plain error not brought to the attention of the trial court[,]' provided it is 'in the interests of justice' to do so." Robinson, 200 N.J. at 20 (quoting R. 2:10-2).

psychological profile is significant for very serious issues and that she functions, at best, "at a level consistent with a [fifteen] year old." Dr. Mack noted that R.B. "is judged to be a disabled person" who has "ongoing psychiatric and neuropsychological impairments." She receives SSD benefits based on Dr. Holbrook's medical opinion regarding her mental health issues. Based on our review we conclude the parties' certifications triggered the need for a plenary hearing because the certifications present a material factual dispute, and the judge mistakenly exercised her discretion in not scheduling a plenary hearing. Llewelyn v. Shewchuk, 440 N.J. Super. 207, 217 (App. Div. 2015).

Absent an agreement to the contrary, when a child reaches the age of majority, it is "prima facie, but not conclusive, proof of emancipation." Id. at 216 (citation omitted). "Once the presumption is established, the burden of proof to rebut the statutory presumption of emancipation shifts to the party or child seeking to continue the support obligation." Ibid.

"Prior to addressing whether parental support is required for a child who reaches majority, the pivotal question is whether the child remains unemancipated." Ricci v. Ricci, 448 N.J. Super. 546, 573 (App. Div. 2017). A child with disabilities will be considered unemancipated "if the child suffers from a severe mental or physical incapacity that causes the child to be financially

13

dependent on a parent." N.J.S.A. 2A:34-23. The law was significantly changed in 2016 when N.J.S.A. 2A:17-56.67 was enacted to create an automatic termination of support when a child reaches the age of nineteen, subject to continuation upon application by the residential parent or the child leading to a court order. It became effective on February 1, 2017. Pursuant to the statute, all child support terminates once a child turns twenty-three. The statute is applicable even when the child has a mental or physical disability. N.J.S.A. 2A:17-56.67(e)(2). However, if a parent needs to obtain financial assistance for a disabled adult child, the statute allows the court to order "another form of financial maintenance for a child who has reached the age of [twenty-three]." Ibid.

The record contains competent proof that R.B. suffers from a myriad of emotional, psychological, and psychiatric problems that prevented her from entering the Navy or supporting herself. See Kruvant, 100 N.J. Super. at 118. She is non-compliant with taking medications. Dr. Mack opined that R.B. is unable to function "without ongoing and extreme parental support," and she is "not out of the sphere of influence of her parents," due to her issues. Plaintiff demonstrated prima facie evidence of R.B.'s incapacities triggering consideration and application of N.J.S.A. 2A:17-56.67 and 2A:34-23(a) through

14

a plenary hearing.  Moreover, paragraphs 4.1, 10.1, and 6.1 of the MSA reflect the parties' concern about R.B.'s future because the door was left open to "determine her status, what her plans are, and whether there is a child support obligation" (paragraph 4.1), and "should she be deemed unemancipated for any reason" (paragraph 10.1).  The issue of the parties' intent relative to these provisions they negotiated and agreed to in their MSA regarding R.B. warrants testimony at a plenary hearing.  Because we have determined that the issue of R.B.'s emancipation warrants a plenary hearing, we need not address any additional issues raised by plaintiff in her appeal.  She may present those issues if she chooses in the Family Part on remand.

In summary, we reverse the October 7, 2022 order in its entirety and remand all issues raised in plaintiff's motion and defendant's cross-motion to the Family Part for consideration and determination following a plenary hearing.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0484-22